## SUPREME COURT.

SAMUEL C. BOWEN, treasurer, &c., respondent agt. THE FIRST
        NATIONAL BANK OF MEDINA, appellants.

The Code contains no express limitation of the time within which a motion must be
    made *to set aside an attachment.*   A motion to set aside the attachment for

Bowen agt. The First National Bank of Medina.

irregularity may be made after judgment obtained and execution issued in the action.*

The *receiver* of a banking association organized under the provisions of the act of congress, may move to set aside an *attachment* in the action, upon which the property of the bank had been seized.

The *national banks* formed under the act of congress are *foreign corporations*, and liable to *attachment*, within the provisions of the Code.

*Erie General Term, November,* 1867.

*Before* DAVIS, MARVIN *and* DANIELS, *Justices.*

ON the twenty-third day of February, 1867, an action arising on contract was commenced in this court by the plaintiff against the defendants. At that time the defendants were a banking association, organized under the provisions of the act of congress passed June 3, 1864, to provide a national currency, located and carrying on business at the village of Medina, in Orleans county. An attachment was issued in the action, under which the property of the defendants was seized, on the twenty-third of February, 1867. On the ninth day of March following, a receiver was appointed of the property and assets of the defendants, under the provisions of the act of congress. Judgment was recovered in the action on the eighteenth of the same month, and on the ninth of April, 1867, motion papers were served, upon which a motion was afterwards made to set aside the attach-

* NOTE.—There have been some different views presented on this question: In the case of *Thompson* agt. *Culver* (24 *How.* 286), it was held in accordance with this decision, that a motion to set aside an attachment may be made after judgment in the action; the judgment does not supersede the attachment. In *Schieb* agt. *Baldwin* (22 *How.* 278), it was held, that in an action where an attachment is issued, the entry of judgment in the suit supersedes the attachment, which becomes of no force, and the property of the defendant cannot be seized under it. In *Syracuse City Bank* agt. *Coville* (19 *How.* 385), it was held, that the judgment in the action confirms the lien of the attachment. In *Spencer* agt. *Rogers Locomotive Works* (13 *Abb.* 180), it was held, that after judgment for the plaintiff has been recovered, the lien of the attachment has become consummated, and the right to satisfaction out of the specific property established, though satisfaction is suspended by appeal, in that it becomes then equivalent to an execution actually levied. In *Lawrence* agt. *Jones* (15 *Abb.* 110), it was held, that the issuing of an attachment against a debtor, on the ground that he is a non-resident, while he is in fact a resident, is an irregularity merely ; and a motion to discharge the attachment does not involve the merits. Unreasonable delay in moving to set aside the attachment for such irregularity, as where judgment had been rendered and execution issued, is a sufficient answer to the motion.—REP.

ment as irregular. The special term before which that motion was made denied it, and from the order denying it the receiver appealed to this court.

T. R. STRONG, *for appellants.*
SICKLES, GRAVES & CHILDS, *and* BESSAC & BULLARD, *for respondent.*

DANIELS, J. The Code of Procedure contains no express limitation of the time within which a motion must be made to set aside an attachment. For many purposes, the attachment continues to be operative after the judgment has been recovered and the execution has been issued. And if those events limited the period within which such a motion should be made, very great injustice might in some cases be successfully accomplished by means of an irregular attachment. As the legislature has imposed no such limit, and none is necessarily presented by the recovery of the judgment and the issuing of the execution, the party affected by the attachment cannot properly be precluded by them from afterwards making the motion. Where the attachment is merely irregular, voidable, but not void, such a proceeding would be found to be indispensable to the maintenance of the rights secured to the party whose property should be seized under it. These attachments are often issued against parties who hear nothing of them, or the proceedings taken under them, for months after the judgment has been recovered and execution has been issued; and if they could not after that move to set them aside, where they were found to be irregular, the law would afford them no redress for the injuries which the attachments had been made the instruments of producing. In the case of *Thompson* agt. *Culver* (24 *How.* 286), this point was presented and considered, and the court entertained no doubt but that the motion could be properly made.

As the receiver succeeded to all the rights and interests of the bank, no good reason can be given for precluding him

from making the motion to set aside the attachment. Where the bank itself omitted for any cause to make the motion, denial of the right to make it to the receiver might very seriously embarrass him in the discharge of the duties the law has imposed upon him. A proper and efficient exercise of the powers conferred upon him require that he should be permitted to make the motion.

This brings up the important point in the case, whether the law will permit the property of these banking associations to be seized by attachment, upon the ground that they are foreign corporations. They are clearly not foreign corporations, within the common import of those terms; for they are formed under the laws of the federal government, which are not foreign to the state of New York. Those laws constitute a part of the government of the people of the state, so far as they are constitutionally enacted, as completely as the laws do which are constitutionally enacted by its own legislature; and, within their appropriate sphere, they are paramount to the laws enacted by the authority of the state itself. They are in no sense foreign laws. Neither are the institutions or corporations for which they provide foreign in their character; for they are provided for by an integral portion of the government of the people existing within the state, though forming no part of its state government. It is done by the national authority, existing and exercising its functions wihin the states; and no question is presented upon the present appeal in any manner drawing the propriety of this legislation in controversy. What is now involved is the construction which shall be placed upon the law providing for the issuing of attachments against foreign corporations, not as those terms are popularly understood, but as they have been used by the legislature. Ordinarily, it is to be presumed that the popular sense of the terms used is the sense in which they were used by the authority enacting the laws: but in this instance there is good reason for believing that such was not the case; for, in describing the bodies that are referred

to as foreign corporations, the description has not been confined to those which may be found under the laws of some other state or country foreign to this state, but it has been extended beyond that, so as to include within the comprehension of the law all such corporations as may be formed under any other government than that of the state itself, properly so called.    This is not a new feature in the legislation of the state; it will be found embodied in the laws contained in the Revised Statutes, which provided for attachments against what were designated as "foreign corporations." Under the statute then enacted, attachments could, by the express language used, be issued against a "corporation created under the laws of any other state, government or country," where the action was for the recovery of any debt or damages arising on a contract made within this state, or a cause of action arising therein. (2 R. S. Edm. ed. 479, § 15.) The corporations thus described are referred to in several of the succeeding sections as "such corporation," while in others they are called "foreign corporations;" indicating the legislative sense to be that "foreign corporations," and "corporations formed under the laws of any other state, government or country," included precisely the same subjects of legislation. This appears to have been done, not for the purpose of restricting the process of attachment to such corporations as were strictly foreign in their nature, on account of their having been formed under the laws of another state or country, but for the purpose of designating those corporations which it had previously been provided could be proceeded against in that manner as foreign corporations. It was in substance a legislative declaration that the terms "foreign corporation" were to be understood in the law as including such corporations as were formed under the laws of any other government than that of the state which enacted the law, as well as those formed under the laws of any other state or country. If that was not the sense in which these terms were used, then none whatever can be discovered in

the law which can be attributed to them, for no intention is indicated of restricting the legal signification of the section first referred to, in any manner whatsoever. It is not to be supposed that the terms, any other government, in this connection, were made use of without any definite purpose; and they must have been, if the object of the law was to include only such corporations as should be formed under the laws of another state or country. But one object could have been intended by their use, and that was to include all such corporations as were not formed under the laws enacted by the state itself, even though they were not formed under the laws of another state or country. If they are to have any meaning whatever, that must be their import; for in no other way can any effect be given to them. And if that was the intention the legislature designed to express by them in the enactment of the Revised Statutes, they must have the same construction in the Code; for the provisions of the Code, in this respect, are substantially taken from the pre-existing legislation relating to the same subject. (2 *R. S. Edm. ed.* 479, §§ 15, 30; *Statutes at Large, vol.* 4, 677.)

By chapter 1, title 13, of the Code, it is provided that actions may be brought in the supreme court, &c., against corporations created by or under the laws of any other state, government or country, by residents of the state, for any cause of action, and by non-residents, when the cause of action shall have arisen, or the subject of the action shall be situated, within the state. And by chapter 4 of title 7, an attachment may be issued when the action is for the recovery of money, and it is brought against a corporation created by or under the laws of any other state, government or country. These terms, it will be seen, are used designedly in all the laws relating to this subject, and, as before observed, they must have been intended to include all corporations formed under the laws of any other government than the one enacting the law, even though that government should not be the government of another state or country, which would plainly

include the government of the United States. And when the terms "foreign corporation" are afterwards used, as they are in sections 229 to 239, they were intended to include and refer to the corporations comprehended within the general language of section 227, and to be equally extended in their legal import; and, as so understood, they include corporations formed under the laws of the United States, for that is a government other and different from the one speaking through the law under consideration.

As thus construed and understood, the national banks formed under the act of congress are foreign corporations, and liable to attachment, within the provisions of the Code; for, though formed under a law enacted by the government constituting a portion of the government of the people of the state, it is still no part of the state government properly so called, and is entirely distinct and separate from that which enacts the state laws.

If these institutions are not liable to proceedings by attachment, under the provisions of the Code, then in many cases persons living within this state would be provided by its laws with no remedy against them; for, as they are not formed under the laws of any other state or country, suits could not be maintained against them, even where they should be organized and transact their ordinary business in another state, and their property should be found within this state, unless that could be done upon the ground that they were formed under the laws of another government. They are not, where they exist in other states, formed under the laws of such states. Neither are they formed under the laws of any other country, as that term is used in the statute, for that was intended to refer to corporations formed under the laws of foreign countries. The only manner in which they can be sued at all in this state, where they are formed and exist in other states, is under this provision of the law which allows proceedings by attachment to be taken against them as corporations formed under another government different

and distinguishable from that of this state. And if this provision will, as it clearly must, include all such coporations as may be formed in other states, under the laws of the United States, it certainly will those formed in this state, for they are, equally with the others, formed under the laws of another government, as those terms are made use of in the Code of Procedure.

They are rendered liable to actions in the courts of the state by the act of congress under which they are organized; and no restriction whatever is imposed, requiring such actions to be brought in any particular way, or limiting them to the same proceedings as may, under the laws of the state, be taken against the corporations formed under those laws (13 *U. S. Stat. at Large*, 116, § 57.), but they are made liable generally to suits, actions and proceedings provided by the state, and they must necessarily be commenced and prosecuted as its laws have designated they may be. In that respect, they are liable to all such proceedings as the laws have provided for rendering the suits that may be commenced against them legally effectual; and as the laws of this state are now formed, that can only be done by holding the national banking institutions liable to proceedings by way of attachment, as corporations formed under the laws of a government distinct and different from that of the state. No difficulty stands in the way of doing this, under the 52d section of the national banking law; for that does not prohibit the seizure of the property and effects of an insolvent banking corporation, by its creditors, when it can lawfully be done by way of attachment proceedings. It merely prohibits the corporation itself from assigning or transferring its property, or paying its debts, after the commission of an act of insolvency, or in contemplation of insolvency, when that shall be done with the intent or design mentioned in the section; and the succeeding section extends the prohibition to the directors, officers, agents and servants of the corporation. (13 *U. S. Stat. at Large*, §§ 52, 53, 115, 116.)

The order appealed from in this case, as well as in the case of Amos Hutchinson against the same defendant, depending upon a similar state of facts, should therefore be affirmed.

MARVIN and DAVIS, Justices, concur.