## Case No. 2,279.

### CADLE v. TRACY et al.

[11 Blatchf. 101;[1] Thomp. Nat. Bank Cas. 230.]

Circuit Court, S. D. New York. April 23, 1873.

SUIT AGAINST NATIONAL BANK — JURISDICTION OF
STATE COURT—WAIVER.

1. T., a resident of Kentucky, and a creditor of a national bank incorporated under the act of congress of June 3d, 1864 (13 Stat. 99), and located in Alabama, brought a suit against it, in the supreme court of New York, to recover a debt alleged to be due from the bank to him, and, in such suit, attached certain moneys in the possession of a national bank in New York, as the property of the Alabama bank. The suit was commenced by attachment and publication of the summons. C., who was appointed receiver of the Alabama bank, under the provisions of the said act, was, on his own application, substituted as defendant in such suit, in place of the Alabama bank, with the like force and effect as if the suit were continued in the name of said bank, and thereupon put in an answer therein, setting up a want of jurisdiction, in the state court, over him, as an officer, or over the bank, or over the subject of the action, and other defences. The suit was tried, and a judgment was rendered, that T. recover of C., as receiver of the bank, a certain sum, "to be levied and collected of the moneys and property whereon an attachment has been heretofore levied in this action." Afterwards, C. filed a bill in equity in this court, against T. and the New York bank, praying for an injunction against T. from proceeding further on his attachment, or on any judgment in the suit in which such attachment was issued, and for the payment to him, C., of the moneys in the hands of the New York bank. The Code of Procedure of New York (section 227) provides, that, in an action arising on contract, for the recovery of money only, "against a corporation created by, or under the laws of, any other state, government, or country," the plaintiff, at the time of issuing the summons, or at any time afterwards, may have the property of such corporation attached, in the manner thereinafter prescribed, as a security for the satisfaction of such judgment as the plaintiff may recover. The same Code (section 427) provides, that an action "against a corporation created by, or under the laws of," any other state, government, or country," may be brought in the supreme court of New York, by a plaintiff not a resident of the state of New York, "when the cause of action shall have arisen, or the subject of the action shall be situated, within the state." The bill proceeded on the ground that the state court had no jurisdiction of the suit against the Alabama bank, because it could not acquire jurisdiction, in invitum, of a suit against a corporation created under said act, and also because the cause of action in such suit did not arise within the state of New York: Held that, so far as the provision of section 427 of the Code of New York was concerned, the supreme court of New York had jurisdiction over the suit.

2. The effect of the provisions of the 57th section of the said act of June 3d, 1864 [13 Stat. 116], was to deprive the state court of jurisdiction over the suit.

3. C. was not estopped, by the proceedings in the suit in the state court, from questioning the jurisdiction of that court over him, or its jurisdiction to render against him the judgment which he did render.

4. C. was entitled to the relief prayed for.

5. A national bank incorporated under said act can be sued only in the courts designated in the 57th section thereof.

[Cited in Harvey v. Allen, Case No. 6,177; McCracken v. Covington City Nat. Bank, 4 Fed. 607.]

6. Whether the cause of action, in the said suit arose in New York, quere.

7. In the case of a corporation aggregate, no waiver of an objection to jurisdiction can be produced, by the fact that the corporation appears and pleads by attorney.

[In equity. Bill by C. Cadle, Jr., receiver of the First National Bank of Selma, Ala., against Buford A. Tracy and others, to enjoin proceedings in the state court.]

Sterne Chittenden, for plaintiff.
Eugene Smith, for Tracy.
Henry E. Tremain, for U. S. Atty.

BLATCHFORD, District Judge. So far as the bill of Cadle, the plaintiff herein, and the answer of the defendant Tracy, raise issues between those two parties, such issues, and the subject-matter of the controversy created thereby, are the same as in the suit in the supreme court of New York, between those two parties.

In the bill in this suit, the plaintiff, after setting forth his title as receiver of the First National Bank of Selma, in Alabama, under the act of congress of June 3d, 1864 (13 Stat. 99), avers, that the Selma Bank became insolvent as early as the 16th of April, 1867; that, when it became insolvent, part of its assets, amounting to $6,972.88, in currency, and $8,409.96, in gold coin, were in the possession of the Ocean National Bank of the city of New York; that the Ocean Bank still has such assets; that the defendant Tracy claims a part of them under an attachment issued in his favor as a creditor of the Selma Bank, by the supreme court of New York, on the 29th of April, 1867; that the Selma Bank, on and before the 12th of April, 1867, was indebted to the United States in more than $250,000; that the United States recovered a judgment, for that amount, against said bank, in the district court of the United States for the southern district of New York, on the 20th of August, 1867; and that the United States have a prior lien on the said assets in the hands of the Ocean Bank. The prayer of the bill is, that Tracy may be enjoined from proceeding further on his attachment, or on any judgment in the suit in which such attachment was issued, and that the moneys in the hands of the Ocean Bank may be paid to the plaintiff.

The answer of the defendant Tracy, in this suit, admits, that the Selma Bank became insolvent on the 16th of April, 1867; that the Ocean Bank had in its possession the assets referred to; and that the United States recovered the judgment above mentioned. It then avers, that the Selma Bank, on the 15th of April, 1867, gave to the defendant Tracy eight drafts, drawn by it, on

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

the Ocean Bank, all dated that day, for $8,500 in all, payable to his order; that payment of the drafts was demanded of, and refused by, the Ocean Bank, on the 27th of April, 1867; that, on the same day, advice thereof was duly given to the Selma Bank; that, on the 29th of April, 1867, an action was commenced on the drafts, by Tracy, against the Selma Bank, in the supreme court of New York, by publication of a summons and by attachment; that, on the same day, the attachment was duly levied by the sheriff on the money in the Ocean Bank; that, on the 13th of May, 1868, an order was made in that suit, on the application of Cadle, whereby he, as receiver of the Selma Bank, was substituted as defendant in that suit, with the like force and effect as if that suit were continued in the name of the Selma Bank; that, thereupon, Cadle interposed an answer in that suit; that the suit was tried, and Tracy recovered judgment in it on the 9th of February, 1871, for $11,-573.24, to be levied and collected of the moneys attached, being the moneys in the Ocean Bank; that Cadle appealed from the judgment, and the general term of the supreme court affirmed it; that both of the judgments remain in force; that thereby Tracy has a lien on said moneys, which is paramount to the claim of Cadle, and the amount of the judgments ought first to be paid out of said moneys, and the rights of Cadle extend only to the surplus of said moneys; that, Cadle, by his answer, in the suit in the state court, claimed, as his defence, that the state court had no jurisdiction either over him, as an officer, or over the Selma Bank, or over the subject of the action; that it was his duty, as receiver of that bank, to make such disposition of its assets as was required by the act before mentioned; and that, to permit service of process, in that suit, by attachment, to be effective, or to make him amenable to that suit, would be contrary to law and to said act; that Cadle, by said answer, also set up the said indebtedness of the Selma Bank to the United States, and the said judgment in favor of the United States, and claimed that the United States had a prior lien on said moneys; that, on the trial of that suit, the state court found, as conclusions of law, that it acquired jurisdiction over the Selma Bank and over Cadle, to the extent of the funds attached; that it had jurisdiction over the subject of the action; that the cause of action arose in the state of New York; that the said act contained no provision operating to defeat the attachment in that suit; that the United States had not acquired any prior lien on the funds, and that Tracy was entitled to judgment against Cadle, as such receiver, for $10,766.48, and costs, to be levied and collected of the attached funds; that judgment was rendered therefor, and affirmed, as above stated; that the bill in this suit is for the same matters, and based on the same

grounds, as were set up by Cadle in the said suit in the state court; that all the claims and rights which are asserted by Cadle in said bill, in reference to the moneys in the Ocean Bank, were asserted and litigated in the said suit in the state court, and were decided adversely to Cadle, and in favor of Tracy, by said judgments; and that the validity of the claim of Tracy, by virtue of the attachment and judgments in the said suit in the state court, and the right of Tracy to have the same paid out of said moneys, was finally and judicially determined by the state court, in that suit. The answer then states, that Tracy sets up the said judgments, and prays the same benefit of them, and of the matters alleged in his answer, as if he had specially pleaded the same in bar to the bill, and as an estoppel to the plaintiff, in this suit.

The record of the proceedings in the suit in the state court is in evidence. On the 23d of April, 1868, an order was made in that suit, continuing it in the name of the Selma Bank, under the provisions of the act of the legislature of New York, of April 26th, 1832 (Sess. Laws 1832, c. 295, § 4), until a final judgment should be had, which should have the like effect on the rights of the parties as if the corporation had not been dissolved, such order to have effect as of the 1st of June, 1867. On the 13th of May, 1868, on a motion made in that behalf, by Cadle, as receiver, an order was made in that suit, that Cadle, as receiver, be substituted as defendant therein, with the like force and effect as if the action were continued in the name of the Selma Bank.

In July, 1868, Cadle, as receiver, put in his answer, in the suit in the state court. That answer contained the averments, and raised the defences, which the answer of Tracy in this suit states it contained and raised. On the trial, the state court found to the effect set forth in said answer of Tracy, and the judgment referred to was rendered, and appealed from by Cadle, and affirmed.

It follows, from the foregoing facts, that, if the state court had jurisdiction to render the judgment which it did render, between Tracy and Cadle, this court cannot, in this suit, reexamine the matters settled by that judgment, as between Tracy and Cadle.

The summons and the complaint, in the suit in the state court, asked for judgment against the Selma Bank for the amount of the drafts, and the judgment rendered was a judgment that Tracy recover of Cadle, as receiver of the Selma Bank, $10,766 48, and $806 76 costs, being, in all, $11,573 24, "to be levied and collected of the moneys and property whereon an attachment has been heretofore levied in this action." The judgment was, in form, one in personam, against Cadle, as receiver of the Selma Bank, to be collected out of the attached property.

The Code of Procedure of New York (section 227) provides, that, in an action arising

·on contract, for the recovery of money only, "against a corporation created by or under the laws of any other state, government, or country," the plaintiff, at the time of issuing the summons, or at any time afterwards, may have the property of such corporation attached, in the manner thereinafter prescribed, as a security for the satisfaction of such judgment as the plaintiff may recover; and that, for the purposes of that section, an action shall be deemed commenced when the summons is issued, provided it be personally served, or publication thereof be commenced within thirty days. The same Code (section 427) provides, that an action "against a corporation created by, or under the laws of, any other state, government or country," may be brought in the supreme court of New York, by a plaintiff not a resident of the state of New York, "when the cause of action shall have arisen, or the subject of the action shall be situated, within the state."

The record of the suit in the state court shows, that Tracy resided in Kentucky when the suit was brought; that the Selma Bank was a corporation created under the act before mentioned; and that the suit was commenced by attachment and publication of the summons.

The jurisdiction of the state court is attacked, on the ground that such court could not acquire any jurisdiction, at least, in invitum, of a suit against a corporation created under the act before mentioned; and on the further ground, that the cause of action, in the suit in that court, did not arise within the state of New York.

It is provided, by section 8 of the act before mentioned, under which the Selma Bank was created, that every association, formed pursuant to the provisions of the act, shall be a body corporate, and, by its name, may "sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons." I have heretofore held (Manufacturers' Nat. Bank of Chicago v. Baack [Case No. 9,052]) that the effect of this provision is, not to give to the corporation the capacity to be sued in every court within the United States, whether state or federal, or to give to every such court jurisdiction over every suit which may be brought in it, wherein the corporation is defendant; that its only proper effect, as regards the corporation, when a defendant, is, to provide, that, when the corporation has been brought, as a suitor, into a court which has jurisdiction of the suit, it shall stand in court, in all respects, in the same position, as regards its own rights, or the rights of others against it, as to the subject-matter of the suit, in which a natural person who is a suitor in such court can stand; and that the provision leaves the question, as to the proper court in which the suit is to be brought, in respect of jurisdiction, to be determined by other provisions of law.

There can be no doubt, I think, that the provision of section 427 of the Code of New York, before cited, gives to the supreme court of New York jurisdiction, so far as that provision is concerned, over a suit against a national bank located in another state, as a corporation created under the laws of another government, in favor of a plaintiff not a resident of the state of New York, in the cases provided for by that section. Such has been, in effect, the construction of the statute of New York by the courts of that state. In Bowen v. Bank of Medina, 34 How. Pr. 408, it was held by the general term of the supreme court of New York, for the eighth district, construing sections 227 and 427 of the Code, that the supreme court of New York had jurisdiction, under those sections, of an action against a national bank located in that state, and also jurisdiction to proceed, by attachment, against the property of such bank, in an action against it, arising on contract, for the recovery of money only, on the ground that, within the language of each of these sections, the bank was a corporation created by, or under, the laws of another government. In Cooke v. State Bank of Boston, 50 Barb. 339, it was held, by the special term of the supreme court of New York, in the first district, that the statutes of New York gave to the supreme court of New York jurisdiction of an action against a national bank located in Massachusetts, and, also, jurisdiction to proceed, by attachment, against the property of such bank, the decision being placed on the ground, that, under the provisions of the Code of New York, a national bank is a corporation created under the laws of another government, at least, where it is located in another state, and is foreign both in its origin and its location. Then we have the fact of the decision of the supreme court of New York, special term and general term, in the suit brought by Tracy against the Selma Bank, which resulted in the judgment against Cadle. No decision of any state court of New York is cited, giving any other interpretation to the statutes of New York under which the suit of Tracy was brought, and the attachment was issued; and, although the point does not appear to have been passed upon by the highest court in New York, yet, under the settled doctrine, that a federal court will follow the decisions of the state tribunals on all questions depending upon the local statute laws of the states, it must be held, that, so far as the statutes of New York are concerned, the supreme court of New York had jurisdiction to entertain the suit of Tracy against the Selma Bank, and to proceed against the property of such bank by attachment, in such suit.

But, it is contended that the jurisdiction of the supreme court of New York over that suit is restricted and taken away by the 57th section of the said act of June 3d, 1864, which provides, "that suits, actions and proceedings against any association under this

act, may be had in any circuit, district or territorial court of the United States held within the district in which such association may be established, or in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases, provided, however, that all proceedings to enjoin the comptroller under this act, shall be had in a circuit, district, or territorial court of the United States, held in the district in which the association is located."

It is urged, on the part of Tracy, that the expression, "under this act," in the 57th section, where it occurs first—"suits, actions and proceedings against any association under this act,"—has the same meaning which it must necessarily have where it occurs the second time in that section—"proceedings to enjoin the comptroller under this act,"—and that it refers, in both cases, solely to proceedings provided for by the act; that, where it first occurs, it refers to proceedings which seek to enforce the various obligations imposed upon the corporation and its officers, to guard against the mal-administration of the affairs of the corporation, and to collect the penalties and determine the forfeitures established by the act; that such proceedings are, under section 41; suits against the association to collect taxes from it, and to collect penalties for not making returns, and, under section 53, suits to forfeit the franchise of the association and dissolve it; that such proceedings must, from the general principles applicable to corporations, be had in courts established in the place where the corporation is located; and that the words, "under this act," in the 57th section, are only equivalent to the words, "arising out of the provisions of this act," used in the 56th section, in the enactment, that "all suits and proceedings arising out of the provisions of this act, in which the United States, or its officers or agents, shall be parties, shall be conducted by the district attorneys of the several districts, under the direction and supervision of the solicitor of the treasury."

There is much force, at first, in this view; and it derives some strength from the language of the provision of the 8th section, before cited, and, also from a consideration of the language of the 11th and 59th sections of the prior banking act of February 25, 1863 (12 Stat. 665), which latter act was repealed by the 62d section of the act of June 3, 1864 [13 Stat. 118]. The 11th section of the act of 1863 contained the same provision found in the 8th section of the act of 1864, that the association, by its corporate name, could "sue and be sued, complain and defend, in any court of law or equity, as fully as natural persons." The 59th section of the act of 1863 provided that "suits, actions, and proceedings, by and against any association under this act, may be had in any circuit, district or territorial court of the United States, held within the district in which such association

may be established." Considering the 11th section of the act of 1863 by itself, it is not unreasonable to say, that that section enacted, that the corporation could sue and be sued in any court which, by its constitution and practice, and by the actual course of proceeding in the particular suit, would have jurisdiction of the subject-matter of the suit and of the parties thereto; and that this was a provision in respect to suits which might arise out of the dealings of the corporation with other persons, in the way of its business, in such dealings, by way of contract, or otherwise, as a natural person might have, in his relations with other persons. Then came the question as to providing for suits and proceedings arising out of the provisions of the act. So, the 55th section of the act of 1863 was enacted, in the same words, before cited, as the 56th section of the act of 1864. So, also, the 59th section of the act of 1863 was enacted, in the words before cited. That section, in terms, provides for suits "by and against any association under this act," while the 57th section of the act of 1864 provides only for suits "against any association under this act." The 29th section of the act of 1863 provided, as does the 50th section of the act of 1864, for a suit by an association, in the nearest circuit, district, or territorial court of the United States, on the denial of its failure to redeem its circulating notes, to enjoin the comptroller of the currency from proceeding to wind it up. So, too, the 19th section of the act of 1863 made the association liable to a suit for a penalty for not making a return, and the 50th section of that act made it liable to a suit to forfeit its franchise and dissolve it.

In the case of Bank of U. S. v. Deveaux, 5 Cranch [9 U. S.] 61, the question arose, whether the Bank of the United States, incorporated by the United States in 1791, was competent to sue in a circuit court of the United States. The act of incorporation conferred on the corporation, in terms (Act Feb. 25, 1791; 1 Stat. 192, § 3), the capacity to "sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any other place whatsoever." But the court held, that this provision did not enlarge the jurisdiction of any particular court, but only gave "a capacity to the corporation to appear, as a corporation, in any court which would, by law, have cognizance of the cause, if brought by individuals;" that, if that clause gave jurisdiction to the federal courts, it gave it equally to all courts having original jurisdiction; and that a general right to sue in all courts, and in any court, did not imply a right to sue in the courts of the United States, unless such right was expressed. The court based this view, in part, on the fact, that the act, in one part of it, authorized a suit to be brought against the directors individually, for creating an excess of debt, in any court of record, federal or state. The conclusion,

was, that no right was conferred on the bank, by its act of incorporation, to sue in the federal courts.

In enacting the banking act of 1863, it was necessary, then, it is contended, for congress, if it desired to give jurisdiction of proceedings under that act to the federal courts, to so enact, in terms. The 29th section of the act of 1863, in terms such as are found re-enacted in the 50th section of the act of 1864, provided, that the association might "apply to the nearest circuit, district, or territorial court of the United States," to enjoin the comptroller of the currency; and the 50th section of the act of 1863, in terms such as are found re-enacted in the 53d section of the act of 1864, except that the latter act requires the suit to be brought by the comptroller of the currency, provided, that the franchise of the association might be adjudged to be forfeited, and it might be declared to be dissolved, "by a proper circuit, district, or territorial court of the United States." But, the terms, "the nearest" court, and "the proper" court, were entirely vague. Therefore, it is said, the 59th section of the act of 1863 was enacted, giving jurisdiction to particular federal courts, of the suits by the association, provided for by the 29th section of that act, and of the suits against the association, provided for by the 19th and 50th sections of that act.

Passing now, to the act of 1864, the same reasons, it is urged, existed, for congress to so enact in terms, if it desired to give jurisdiction to the federal courts of proceedings under that act. Hence, it is said, the 57th section of the act of 1864 was enacted, giving jurisdiction to particular federal courts of the suits against the association, provided for by the 41st and 53d sections of that act. The difficulty in giving such a restricted meaning to the words, "under this act," in the first part of the 57th section of the act of 1864, as will confine their meaning to proceedings arising out of the provisions of that act, is, that the provision of that section allowing such proceedings to be taken "in any state, county or municipal court in the county or city in which said association is located. having jurisdiction in similar cases," can have no scope for operation, except in respect to a suit under the 41st section of the act of 1864, against the association, to collect a penalty for not making a return—a penalty to the United States. and one which it would not be likely to sue for in any court but a court of the United States, and one which it could sue for in such court. The 53d section of the act of 1864 requires, that a forfeiture shall be adjudged by a court of the United States. and the suit by the association, to enjoin the comptroller of the currency, (even if the word "against," in the 59th section of that act, is, under the intimation in Kennedy v. Gibson, 8 Wall. [75 U. S.] 498, 506, to be read "by and against," as in the 59th

section of the act of 1863,) must, under the 50th and 57th sections of the act of 1864, be brought in a court of the United States.

In addition to the fact, that, on this restricted meaning of the words, "under this act," there is, practically, no field for the operation of the jurisdiction given to the state courts by the 57th section of the act of 1864, it is to be observed, that congress was creating corporations which were to have business connections with vast numbers of persons, and were expected to take the place of state institutions of a like character. It was, therefore, to be expected, that congress, in clothing such corporations with all their functions, would prescribe in what tribunals, not only proceedings against them, taken under the act, but all suits against them, should be brought. As the corporations are created by congress, suits against such corporations are cases arising under a law of the United States, within the meaning of the constitution (article 3, § 2), and it was competent for congress to confer on the federal courts jurisdiction over such suits. Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738. It was, also, competent for congress to make jurisdiction of such suits exclusive in the federal courts. Martin v. Hunter's Lessee, 1 Wheat. [14 U. S.] 304, 336, 337; The Moses Taylor, 4 Wall. [71 U. S.] 411, 429. Under that power, it could allow such suits to be brought in certain specified federal courts, in terms which would, by necessary intendment, exclude all other federal courts, and exclude all state courts; and it could qualify the exclusion of state courts, by allowing such suits to be brought in certain specified state courts, in terms which would, by necessary intendment, exclude all other state courts.

The question, in the present case, is, as to what congress has done, in that regard, by the enactments in the 8th and 57th sections of the act of 1864. The language of the opinion of the supreme court in Kennedy v. Gibson, before cited, treats the 59th section of the act of 1863, and the 57th section of the act of 1864, as providing for suits generally, and not merely for proceedings arising under the statute, although the point was not involved in that case. That is, also, the view of the supreme court of Massachusetts, in Crocker v. Marine Nat. Bank, 101 Mass. 240. A suit "against any association under this act" means, a suit against any association created under the act. An "association under this act" means. properly interpreted, and in ordinary speech, "an association existing or formed under this act;" because, if an association at all, it is one under the act, and. having no existence except from the act, it is an association under, that is, by virtue of, the act.

Now, if the 8th section stood alone, the association might be sued in any court which had authority to exercise jurisdiction over it. But, the 57th section must be regarded as in-

tended to regulate the whole subject of jurisdiction over suits against associations. It gives jurisdiction to the federal courts of the district in which the association is established. Under this provision, a citizen of the state where the association is established, as well as a citizen of another state, may sue it in such federal courts. So, also, the section provides that the association may be sued in any state court in the county or city in which it is located, which has jurisdiction in similar cases. It is true, that the word used is "may," and that that word is used, in the section, in reference to both federal courts and state courts. But, that word cannot, in regard to the state courts, be regarded as permissive or enabling, because under the 8th section, a state court in the county or city in which the association is located, having jurisdiction in similar cases, might have jurisdiction of a suit against the association, if the state authority so provided; and, therefore, the provision of the 57th section, in regard to state courts, if merely permissive or enabling, is surplusage, and contains no more than was already contained in the 8th section. Under the 59th section of the act of 1863, congress made the jurisdiction of suits against associations exclusive in the federal courts of the district in which the association was established. Under the 57th section of the act of 1864, it extended such jurisdiction, also, to certain specified state courts. But, there is a clear indication that the jurisdiction of such suits by state courts was intended to be confined to the state courts specified. If this is not so, there was no need of saying anything about state courts, in the 57th section of the act of 1864. The state courts specified in that section are already covered by the 8th section of the same act. It cannot be supposed that congress did not intend that the provision in the 57th section in regard to state courts should have some meaning, and it can have none unless as a restriction on the general provision in regard to jurisdiction found in the 8th section.

Moreover, congress having provided for the creation of these associations, and having power to say where they may be sued, when, taking the 8th and 57th sections of the act together, we find that congress has prescribed that they may be sued in certain designated courts, it is a proper construction of the language, to hold, that they must be sued in those courts, and cannot be sued in any others.

The only reported decision to which I have been referred, which holds that the suit of Tracy against the Selma Bank could be maintained, is that of Cooke v. State Bank of Boston, before cited, in December, 1867, which holds, that the provisions of the 57th section of the act of 1864 do not control or modify those of section 8 of the same act. The subject is not discussed in the opinion delivered in that case, and the deci-

sion seems to be put principally on the ground, that, unless the state courts of New York have jurisdiction of a suit against a national bank located in another state, such bank could, by removing its funds to New York, place them beyond the reach of any action that could be brought against the corporation. Congress must be presumed to have considered that question, when limiting the jurisdiction of the state courts by the 57th section, and to have regarded the provisions made by the act for obtaining possession of the assets of an insolvent bank as sufficient.

The supreme court of Massachusetts, in the case before cited, by the unanimous opinion of six judges, in a suit brought in Massachusetts against a national bank located in New York, held, that, notwithstanding the provision of the 8th section of the act of 1864, the 57th section of that act, in designating the locality of the federal and state courts in which suits may be brought against associations, had regulated the whole subject of suits against them, and had excluded the power to bring suits against them in any courts except those designated in that section. The subject appears to have been carefully considered by that tribunal. In the suit against the Selma Band by Tracy, no opinion by either the special or the general term is furnished to me.

On a full consideration of the question, I must hold, that the supreme court of New York had no jurisdiction of the suit of Tracy against the corporation, on the ground that such jurisdiction was forbidden to it by the 57th section of the act of 1864.

This conclusion makes it unnecessary to consider the point arising under the statute of New York, as to whether the cause of action on the drafts arose in New York. I only desire to say, that I do not mean to be understood as assenting to the view, that such cause of action did arise in New York.

It is contended, that Cadle, by procuring himself to be made a defendant, as receiver of the bank, in the suit of Tracy, submitted himself to the jurisdiction of the state court, and that, however it may have been as to the jurisdiction of that court over the bank, when the suit was brought, Cadle is estopped from questioning its jurisdiction over him, or its jurisdiction to render against him the judgment which it did render. The answer to this view is obvious. By the order of the state court, of May 13th, 1868, Cadle, as receiver, was substituted as defendant in the action, with the like effect as if the action were continued in the name of the bank. Such are the express terms of the order. Therefore, the substitution of Cadle as defendant can have no effect, in respect to the jurisdiction of the court in the action, over its subject-matter, and over the bank as defendant, to confer a jurisdiction, in those particulars, which the court would not have had if Cadle had not been substituted as defendant. Cadle, after being appointed receiver, moved,

in the state court, in the suit, at special term, to discharge the attachment. The motion was denied. That decision was, on an appeal by Cadle, affirmed by the general term. Cadle then appealed to the court of appeals. That court held (37 N. Y. 523) that Cadle had no status to make such a motion, because he was not a party to the suit. Cadle then procured himself to be made a party to it, in the manner stated. But it was, at most, as representative and agent of the corporation, that he became such party, if, indeed, he can be considered, as regards that suit, and as regards the plaintiff therein, as representing anything except the funds attached therein. Tracy had no cause of action against Cadle. He proceeded in the suit, after Cadle was made defendant, to establish the original cause of action against the bank, on which the suit had been brought, and to establish it under a summons and complaint against the corporation, and under the same summons and complaint which were originally put in against the corporation in the suit. The judgment is against Cadle, as receiver, to be collected of the moneys attached—that is, against Cadle, as receiver, so far as the moneys attached were concerned, and against him, as receiver, to that extent only, or as receiver of those moneys. Tracy was not establishing or enforcing any other right, against those moneys, but such right as he had to collect his debt out of those moneys, in the suit he had brought against the bank. Cadle, then, having come in, and, in his answer in that suit, raised the point, that the court had no jurisdiction to entertain originally the suit against the bank or to issue the attachment, cannot be regarded as having, by that act, conferred any jurisdiction on the court, to render the judgment which it did render, which it would not have had if the suit had proceeded without the substitution of Cadle as a defendant. In Commercial & Railroad Bank of Vicksburg v. Slocomb, 14 Pet. [39 U. S.] 60, 65, it is held, that, in the case of a corporation aggregate, no waiver of an objection to jurisdiction can be produced by the fact that the corporation appears and pleads by attorney, "because, as such a corporation cannot appear but by attorney, to say that such an appearance would amount to a waiver of the objection, would be to say, that the party must, from necessity, forfeit an acknowledged right, by using the only means which the law affords of asserting that right." This principle must apply, a fortiori, to the case of an insolvent and dissolved corporation, represented by a receiver of its assets, acting under specific provisions of law. If the state court had no jurisdiction originally of the suit against the corporation, and no right to attach the funds, it had no jurisdiction to render the judgment it did render, and the question stands, in this court, as if Cadle had never been made a defendant, or answered, in the suit in the state court, but had, instead, brought this present suit, in this court.

As the state court had no jurisdiction, the attachment, which is the only claim asserted by Tracy to a right to the moneys in the hands of the Ocean Bank, must fall, and the plaintiff must have a decree, declaring his title to such moneys to be free from any claim made by Tracy. Of his title to them, under the act, the claim of Tracy being out of the way, and of his right and duty, under the 50th section, to collect them, and of his right to bring this suit, in this court, to collect them, there can be no doubt. Kennedy v. Gibson, 8 Wall. [75 U. S.] 498.

Some disposition, before a decree can be entered, must be made of the case as against the defendant Kelly, as late sheriff, either by taking the bill as confessed against him, or otherwise. The injunction prayed for against Tracy must issue. As the bill sets up and admits the lien of the United States on the moneys in the Ocean Bank, and the answer of the United States attorney also claims such lien, such lien must be recognized and declared by the decree, in respect of such moneys as the Ocean Bank shall be decreed to pay.

The bill claims, that the Ocean Bank should pay to the plaintiff the full sums of money, with interest from April 15th, 1867. That bank has gone into insolvency. Its receiver, by his answer, sets up, that he has declared dividends of 70 per cent. from the assets of that bank, and expects to declare further dividends therefrom. He also admits, that the Ocean Bank had the $6,972.88, in currency, and the $8,409.96, in gold coin, and avers, that the latter has been converted into $9,155.43, in currency, making an aggregate of $16,128.31, in currency, and that he has 70 per cent. of that sum in his possession, to the credit of the Selma Bank, and payable as may be decreed by this court. The plaintiff, in a special replication to such answer, objects to the sale of the gold, and claims that the receiver of the Ocean Bank should account for the gold and currency, with interest, as a special fund or trust, unaffected by any ability to declare any dividends. This question has not been discussed on the part of the receiver of the Ocean Bank, and the parties interested in it are entitled to be heard upon it.