## MERCANTILE NATIONAL BANK AT DALLAS *v.* LANGDEAU, RECEIVER.

No. 14.   Argued February 27–28, 1962.—Restored to the calendar for reargument April 2, 1962.—Reargued December 5, 1962.—Decided January 21, 1963.*

---

*Together with No. 15, *Republic National Bank of Dallas* v. *Langdeau, Receiver,* also on appeal from the same Court.

*Hubert D. Johnson* and *Marvin S. Sloman* reargued the cause for appellants.   With them on the briefs was *Neth L. Leachman.*

*William E. Cureton* and *Quentin Keith* reargued the cause for appellee.   With them on the briefs was *Cecil C. Rotsch.*

MR. JUSTICE WHITE delivered the opinion of the Court.

Appellee, the receiver for a Texas insurance company in liquidation in the Ninety-eighth District Court of Travis County, Texas, brought an action in that court against the two national banks who are appellants here and against 143 other parties, alleging a conspiracy to defraud the insurance company and claiming damages jointly and severally in the amount of 15 million dollars. Each appellant filed a plea of privilege, as provided by the Texas Rules of Civil Procedure, asserting that it was located in Dallas County, Texas, and was therefore immune from suit in Travis County under the provisions of Rev. Stat. § 5198 (1878), 12 U. S. C. § 94, which provides:

> "Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases." [1]

---

[1] See Appendix, No. 4.   The pertinent national bank legislation appears in the Appendix to this opinion, *post,* p. 567.

Appellee, on the other hand, relied upon Texas Insurance Code, Art. 21.28, Section 4 of which provides:

"(f) New Lawsuits. The court of competent jurisdiction of the county in which the delinquency proceedings are pending under this Article shall have venue to hear and determine all action or proceedings instituted after the commencement of delinquency proceedings by or against the insurer or receiver."

The pleas of the banks were overruled and they appealed, it being agreed that the only issue for review was whether 12 U. S. C. § 94 entitled appellants to have the action transferred to the state court in Dallas County or whether the state venue provision contained in § 4 (f) of the Insurance Code was controlling. The Court of Civil Appeals reversed and sustained the pleas of privilege on the ground that 12 U. S. C. § 94 required an action against a national bank to be brought in the county of its location. The Texas Supreme Court, however, refused to accept § 94 as prohibiting a suit against petitioners in Travis County when a state venue statute expressly permitted it. 161 Tex. 349, 341 S. W. 2d 161. On the one hand, the court interpreted § 94 as permissive only, not mandatory, and on the other, as having been repealed by an omnibus repealing clause in an 1882 statute [2] subsequently absorbed into 28 U. S. C. § 1348.[3] Appellants brought the cases here under 28 U. S. C. § 1257 (2) and, because of the finality question, we postponed ruling upon our jurisdiction until the merits were considered. 368 U. S. 809.

I.

The question of our appellate jurisdiction is quite similar to the one considered in *Construction Laborers* v. *Curry, ante,* p. 542, although there the jurisdiction of

---

[2] See Appendix, No. 6.     [3] See Appendix, No. 8.

any and all state courts was at issue and here the inquiry is only as to which state court has proper venue to entertain an action against two national banks. Nonetheless, a substantial claim, appealable under state law, is made that a federal statute, rather than a state statute, determines in which state court a national bank may be sued and, as in *Curry,* prohibits further proceedings against the defendants in the state court in which the suit is now pending. This is a separate and independent matter, anterior to the merits and not enmeshed in the factual and legal issues comprising the plaintiff's cause of action. Moreover, we believe that it serves the policy underlying the requirement of finality in 28 U. S. C. § 1257 to determine now in which state court appellants may be tried rather than to subject them, and appellee, to long and complex litigation which may all be for naught if consideration of the preliminary question of venue is postponed until the conclusion of the proceedings. Accordingly, we note our jurisdiction to hear these appeals under § 1257 (2) and turn now to the question of whether appellants may be sued in the Travis County court.

## II.

The roots of this problem reach back to the National Banking Act of 1863, 12 Stat. 665, replaced a year later by the Act of 1864, 13 Stat. 99.[4]   National banks are federal instrumentalities and the power of Congress over them is extensive. "National banks are quasi-public institutions, and for the purpose for which they

---

[4] The history of national banking in the United States begins with the First Bank of the United States, chartered in 1791 (1 Stat. 191; see *Bank of the United States* v. *Deveaux,* 5 Cranch 61), which continued in existence until 1811.   1 Dictionary of American History 155 (1940).   The Second Bank was incorporated in 1816, 3 Stat. 266, see *Osborn* v. *Bank of the United States,* 9 Wheat. 738, and terminated in 1836 when its charter was permitted to expire.   *Ibid.*

are instituted are national in their character, and, within constitutional limits, are subject to the control of Congress and are not to be interfered with by state legislative or judicial action, except so far as the lawmaking power of the Government may permit." *Van Reed* v. *People's Nat. Bank,* 198 U. S. 554, 557. Unquestionably Congress had authority to prescribe the manner and circumstances under which the banks could sue or be sued in the courts and it addressed itself to this matter in the 1863 Act.

By § 11 of that Act the banking associations were given general corporate powers, among them the power to "sue and be sued . . . in any court of law or equity as fully as natural persons." [5]  This section, if the teaching of *Bank of the United States* v. *Deveaux,* 5 Cranch 61, is observed, conferred no jurisdiction upon the courts but merely endowed the banks with power to sue and be sued in the courts as corporations.  Congress, however, had more to say about this subject.  Section 59 of the 1863 Act [6] provided that suits by and against any association under the Act could be had in any federal court held within the district in which the association was established.  No mention was made of suits in state courts. If the law had remained in this form, there might well have been grave doubt about the suability of national banks in the state courts, as this Court noted in *First Nat. Bank* v. *Union Trust Co.,* 244 U. S. 416, 428.[7]

---

[5] See Appendix, No. 1.

[6] *Ibid.*

[7] "[O]ur conclusion on this subject is fortified by the terms of § 57, c. 106, 13 Stat. 116 [the 1864 Act, discussed *infra*], making controversies concerning national banks cognizable in state courts because of their intimate relation to many state laws and regulations, although without the grant of the act of Congress such controversies would have been federal in character." 244 U. S., at 428.  But cf. *Claflin* v. *Houseman,* 93 U. S. 130, 135.

The next year, however, Congress expressly exercised its power to permit national banks to be sued in certain state courts as well as in federal courts. Section 57 of the 1864 Act [8] carried forward the former § 59 and also added that "suits . . . may be had . . . in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases . . . ." The phrase "suits . . . may be had" was, in every respect, appropriate language for the purpose of specifying the precise courts in which Congress consented to have national banks subject to suit and we believe Congress intended that in those courts alone could a national bank be sued against its will.

We would not lightly conclude that a congressional enactment has no purpose or function. We must strive to give appropriate meaning to each of the provisions of Title 12 and its predecessors. See *United States* v. *Menasche,* 348 U. S. 528, 539; *Montclair* v. *Ramsdell,* 107 U. S. 147, 152. Appellee, however, would have us hold that any state court could entertain a suit against a national bank as long as state jurisdictional and venue requirements were otherwise satisfied. Such a ruling, of course, would render altogether meaningless a congressional enactment permitting suit to be brought in the bank's home county. This we are unwilling to do, particularly in light of the history of § 57. That section was omitted from Title 62 (National Banks) of the Revised Statutes of 1873, but at the same time, there were included in Title 13 (The Judiciary) provisions granting the federal courts jurisdiction over suits by and against national banks brought in the district of their residence.[9] These express provisions relating to the jurisdiction of the federal courts apparently did not solve the entire problem, for § 5198 of Title 62, Revised Statutes, was amended

---

[8] See Appendix, No. 2.    [9] See Appendix, No. 5.

in 1875 by adding to it provisions substantially identical to § 57 of the 1864 Act.[10] Thus for a second time Congress specified the precise federal and state courts in which suits against national banks could be brought.

All of the cases in this Court which have touched upon the issue here are in accord with our conclusion that national banks may be sued only in those state courts in the county where the banks are located.[11] Notable among these is *Charlotte Nat. Bank* v. *Morgan*, 132 U. S. 141, which involved a suit against a national bank brought in a county other than that in which the bank was located. This Court stated that § 57 conferred a personal privilege on the banks exempting them from suits in state courts outside their home counties. However, since the bank in that case had not objected at the trial to the location of the suit but raised the issue for the first time on appeal, the Court held that the § 57 privilege had been waived.[12]

---

[10] See Appendix, No. 3.

[11] *Bank of Bethel* v. *Pahquioque Bank*, 14 Wall. 383, was a suit in state courts against a national bank in default on its notes. The national bank contended that since it was an instrumentality of the Federal Government, it was not subject to suit in state courts. This Court, noting that the suit was in a state court where the bank was located, sustained the power of the state court squarely upon the provisions of § 57. Subsequently, *Casey* v. *Adams*, 102 U. S. 66, reaffirmed the mandate of § 57, then Rev. Stat. § 5198, as applied to ordinary transitory actions but held that Congress did not intend it to apply to local, *in rem* actions. Many years later, in the course of deciding *Cope* v. *Anderson*, 331 U. S. 461, this Court, in compelling language, pointed out: "For jurisdictional purposes, a national bank is a 'citizen' of the state in which it is established or located, 28 U. S. C. § 41 (16), and in that district alone can it be sued. 12 U. S. C. § 94." 331 U. S., at 467.

[12] "This exemption of national banking associations from suits in state courts, established elsewhere than in the county or city in which such associations were located, was, we do not doubt, prescribed for the convenience of those institutions, and to prevent interruption in

Thus, we find nothing in the statute, its history or the cases in this Court to support appellee's construction of this statute. On the contrary, all these sources convince us that the statute must be given a mandatory reading.[13]

their business that might result from their books being sent to distant counties in obedience to process from state courts. *Bank of Bethel v. Pahquioque Bank,* 14 Wall. 383, 394; *Crocker v. Marine National Bank,* 101 Mass. 200 [240]. But, without indulging in conjecture as to the object of the exemption in question, it is sufficient that it was granted by Congress, and, if it had been claimed by the defendant when appearing in the Superior Court of Cleveland County, must have been recognized. The defendant did not, however, choose to claim immunity from suit in that court. It made defence upon the merits, and, having been unsuccessful, prosecuted a writ of error to the Supreme Court of the State, and in the latter tribunal, for the first time, claimed the immunity granted to it by Congress. This was too late. Considering the object as well as the words of the statute authorizing suit against a national banking asssociation to be brought in the proper state court of the county where it is located, we are of opinion that its exemption from suits in other courts of the same State was a personal privilege that it could waive, and which, in this case, the defendant did waive, by appearing and making defence without claiming the immunity granted by Congress. No reason can be suggested why one court of a State, rather than another, both being of the same dignity, should take cognizance of a suit against a national bank, except the convenience of the bank. And this consideration supports the view that the exemption of a national bank from suit in any state court except one of the county or city in which it is located is a personal privilege, which it could claim or not, as it deemed necessary." 132 U. S.,.at 145.

[13] The lower federal courts have been unanimous in holding the section fully effective and mandatory. *Buffum v. Chase Nat. Bank,* 192 F. 2d 58 (C. A. 7th Cir. 1951), cert. denied, 342 U. S. 944; *Leonardi v. Chase Nat. Bank,* 81 F. 2d 19 (C. A. 2d Cir. 1936), cert. denied, 298 U. S. 677; *International Refugee Organization v. Bank of America,* 86 F. Supp. 884 (S. D. N. Y. 1949); *Schmitt v. Tobin,* 15 F. Supp. 35 (D. Nev. 1935); *Cadle v. Tracy,* 4 Fed. Cas. 967, No. 2279 (C. C. S. D. N. Y. 1873).

The state courts considering the problem are about evenly divided. Some hold that a national bank must be sued in the county where it

The consequence of our decision, appellee says, is that a litigant will be unable to join two national banks in the same action in the state courts if they are located in different counties or in the federal courts if they are located in different districts. But aside from not being presented by these cases, such a situation is a matter for Congress to consider. Cf. 28 U. S. C. §§ 1391 (a), (b), 1401; *Greenberg* v. *Giannini,* 140 F. 2d 550, 552 (C. A. 2d Cir.). See also, *Bankers Life & Casualty Co.* v. *Holland,* 346 U. S. 379, 384.

Similarly, even if all of the 145 defendants may not be sued in one proceeding in Dallas County with the same facility as they may in Travis County, this, of course, is insufficient basis for departing from the command of the

---

is situated, *Monarch Wine Co.* v. *Butte,* 113 Cal. App. 2d 833, 249 P. 2d 291 (1952); *Crocker* v. *Marine Nat. Bank,* 101 Mass. 240 (1869); *Rabinowitz* v. *Kaiser-Frazer Corp.,* 198 Misc. 312, 96 N. Y. S. 2d 638 (Sup. Ct. 1950); *Raiola* v. *Los Angeles Bank,* 133 Misc. 630, 233 N. Y. Supp. 301 (Sup. Ct. 1929); *Burns* v. *Northwestern Nat. Bank,* 65 N. D. 473, 260 N. W. 253 (1935); *Zarbell* v. *Bank of America Nat. Trust & Savings Assn.,* 52 Wash. 2d 549, 327 P. 2d 436 (1958). Others hold that there is no such requirement on the theory that § 57 of the 1864 Banking Act was impliedly repealed, *Fresno Nat. Bank* v. *Superior Court,* 83 Cal. 491, 24 P. 157 (1890); *Levitan* v. *Houghton Nat. Bank,* 174 Mich. 566, 140 N. W. 1019 (1913); *De Cock* v. *O'Connell,* 188 Minn. 228, 246 N. W. 885 (1933); *Stewart* v. *First Nat. Bank,* 93 Mont. 390, 18 P. 2d 801 (1933); *Guerra* v. *Lemburg,* 22 S. W. 2d 336 (Tex. Civ. 1929); *Brust* v. *First Nat. Bank,* 184 Wis. 15, 198 N. W. 749 (1924), or that the section is to be given a permissive construction, *First Nat. Bank* v. *Alston,* 231 Ala. 348, 165 So. 241 (Ala. 1936); *Hills* v. *Burnett,* 172 Neb. 370, 109 N. W. 2d 739 (Neb. 1961); *Talmage* v. *Third Nat. Bank,* 91 N. Y. 531 (1883); *Curlee* v. *National Bank,* 187 N. C. 119, 121 S. E. 194 (1924). See also *County of Okeechobee* v. *Florida Nat. Bank,* 112 Fla. 309, 150 So. 124 (1933); *Cassatt* v. *First Nat. Bank,* 9 N. J. Misc. 222, 153 A. 377 (Sup. Ct. 1931); *Chaffee* v. *Glens Falls Nat. Bank & Trust Co.,* 204 Misc. 181; 123 N. Y. S. 2d 635 (Sup. Ct. 1953), aff'd, 283 App. Div. 793, 128 N. Y. S. 2d 539, appeal denied, 129 N. Y. S. 2d 237.

federal statute. Nevertheless, though we have no intention of venturing an opinion on matters of Texas procedure, particularly when the parties were in disagreement about them in argument before this Court, we are aware of the recent ruling of the Texas Supreme Court, *Langdeau* v. *Burke Investment Co.*, —— Tex. ——, 358 S. W. 2d 553, holding Texas Insurance Code, Art. 21.28 (4), permissive, not mandatory, thus not restricting the receiver to suits in the receivership court. We have also noted that Texas procedural rules might very well permit the transfer of the entire case to Dallas County. Tex. Rules Civ. Proc. 89; [14] *Tunstill* v. *Scott,* 138 Tex. 425, 160 S. W. 2d 65; *Terrell* v. *Kohler,* 48 S. W. 2d 531 (Tex. Civ. App.). Moreover, Tex. Rules Civ. Proc. 164 [15] appears to permit dismissal of suits without prejudice when a plea of improper venue is sustained, see *Luck* v. *Welch,* 243 S. W. 2d 589 (Tex. Civ. App., ref. n. r. e.); *Wiley* v. *Joiner,* 223 S. W. 2d 539 (Tex. Civ. App.), opening the way for a new suit which Article 1995 (4) [16] indicates could be brought in Dallas County.[17]

---

[14] *"Transferred if Plea Is Sustained.*

"If a plea of privilege is sustained, the cause shall not be dismissed, but the court shall transfer said cause to the proper court . . . ." Tex. Rules Civ. Proc. 89 (Vernon 1955).

[15] *"Non-Suit.*

"At any time before the jury has retired, the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief. When the case is tried by the judge, such non-suit may be taken at any time before the decision is announced." Tex. Rules Civ. Proc. 164 (Vernon 1955).

[16] *"Venue, general rule*

.        .        .        .

"4. Defendants in different counties.—If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides." Art. 1995 (4), Tex. Rev. Civ. Stat. (Vernon 1950).

[17] To be sure, Texas law does not permit frivolous joinder of defendants to insure a desired venue, see *Stockyards Nat. Bank* v. *Maples,*

Appellee, finally, attempts to avoid his venue problem entirely by denying the very existence of § 5198, Rev. Stat. (1878). Section 5198, appellee says, was repealed by the proviso to § 4 of the Act of July 12, 1882:

> "[T]he jurisdiction for suits hereafter brought by or against any association . . . shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States . . . . And all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed." [18]

It is also said that 28 U. S. C. § 1348,[19] derived from the Act of March 3, 1887,[20] re-enacts § 4 of the 1882 Act, in somewhat modified form, thus continuing the congressional intent to repeal § 5198 to the extent that it prescribes the venue of suits in state courts. See 161 Tex., at 356, 341 S. W. 2d, at 166.

Since § 4 of the Act of 1882 and its successors do not expressly repeal § 5198, appellee's contention is necessarily one of implied repeal requiring some manifest inconsistency or positive repugnance between the two statutes. *United States* v. *Borden Co.*, 308 U. S. 188, 198–199. We find neither here. Section 5198, as construed in the *Charlotte Nat. Bank* case, is essentially a venue statute governing the proper location of suits against national banks in either federal or state courts, whereas § 4 of the 1882 Act and the 1887 Act were designed to

---

127 Tex. 633, 95 S. W. 2d 1300, but nothing before us indicates that appellee will find any difficulty in sustaining his burden to establish that the defendant national banks are residents of Dallas County and that, as he alleges, his cause of action against them has a substantial and valid basis.

[18] See Appendix, No. 6. See note 13, *supra*, for state cases which have reached the same conclusion.

[19] See Appendix, No. 8.

[20] See Appendix, No. 7.

overcome the effect of §§ 563 and 629 Rev. Stat.[21] which allowed national banks to sue and be sued in the federal district and circuit courts solely because they were national banks, without regard to diversity, amount in controversy or the existence of a federal question in the usual sense. Section 4 apparently sought to limit, with exceptions, the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited.[22]

Decisions of this Court have recognized that § 4 purported to deal with no more than matters of federal jurisdiction. As we observed in *Continental National Bank* v. *Buford*, 191 U. S. 119, 123–124:

> "The necessary effect of this legislation was to make national banks . . . citizens of the States in which they were respectively located, and to withdraw from them the right to invoke the jurisdiction of the Circuit Courts of the United States simply on the ground that they were created by and exercised their powers under acts of Congress. No other purpose can be imputed to Congress than to effect that result."

---

[21] See Appendix, No. 5.

[22] The proviso to § 4 of the 1882 Act first appeared as an amendment offered on the floor of the House by Representative Hammond, pursuant to the order of the House fixing the assignment of the bill H. R. 4167 as a special order. See 13 Cong. Rec. 3900, 3901. Mr. Hammond succinctly stated the purpose of his amendment as follows: "My amendment, therefore, declares that the jurisdictional limits for and as to a national bank shall be the same as they would be in regard to a State bank actually doing or which might be doing business by its side; that they shall be one and the same." 13 Cong. Rec., at 4049. Mr. Robinson then asked, "As I understand the gentleman's proposed amendment, it is simply to this effect, that a national bank doing business within a certain State shall be subject for all purposes of jurisdiction to precisely the same regulations to which a State bank, if organized there, would be subject." Mr. Hammond replied, "That is all." *Ibid.*

See also *Leather Manufacturers' Bank* v. *Cooper,* 120 U. S. 778. Moreover, nothing in the subsequent history of this statute, now 28 U. S. C. § 1348, warrants the conclusion that Congress sought, even by implication, to relax the venue restrictions of § 5198.

The provisions of § 5198 are fully effective and must be recognized when they are duly raised. The judgments of the Texas Supreme Court are reversed and the causes remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Mr. Justice Black and Mr. Justice Douglas, while agreeing with the Court that the judgments are "final," dissent on the merits of the controversy.

Mr. Justice Clark took no part in the consideration or decision of these cases.

[For dissenting opinion of Mr. Justice Harlan, see *post,* p. 572.]

## APPENDIX TO OPINION OF THE COURT.

1. The Act of February 25, 1863, c. 58:

"Sec. 11. *And be it further enacted,* That every association formed pursuant to the provisions of this act may make and use a common seal, and shall have succession by the name designated in its articles of association and for the period limited therein, not, however, exceeding twenty years from the passage of this act; by such name may make contracts, sue and be sued, complain and defend in any court of law or equity as fully as natural persons . . . ." 12 Stat. 668.

"Sec. 59. *And be it further enacted,* That suits, actions, and proceedings by and against any associa-

tion under this act may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established." 12 Stat. 681.

2. The Act of June 3, 1864, c. 106:

"SEC. 8. . . . Such association . . . may make contracts, sue and be sued, complain and defend, in any court of law and equity as fully as natural persons." 13 Stat. 101; Rev. Stat. § 5136 (1873).

"SEC. 57. . . . That suits, actions, and proceedings, against any association under this act, may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established; or in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases: *Provided, however,* That all proceedings to enjoin the comptroller under this act shall be had in a circuit, district, or territorial court of the United States, held in the district in which the association is located." 13 Stat. 116–117.

3. Section 57 was omitted from Title 62, National Banks, in the Revised Statutes of 1873. It was added to § 5198 of Title 62, National Banks, by the Act of February 18, 1875, c. 80, 18 Stat. 320. Section 5198, as amended, reads as follows:

"SEC. 5198. The taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal repre-

sentatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred. *That suits, actions, and proceedings against any association under this title may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."* (Amendment in italics.)

4. The portion of § 5198, Rev. Stat. (1878), relating to suits in federal and state courts, derived from § 57 of the 1864 Act, now appears as 12 U. S. C. § 94:

"§ 94. Venue of suits.

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

Title 12 has not as yet been enacted into positive law.

5. Revised Statutes of 1873, Title 13, The Judiciary, c. 3, District Courts—Jurisdiction.

"Sec. 563. the district courts shall have jurisdiction as follows: . . . Fifteenth. Of all suits by or against any association established under any law providing for national banking associations within the district for which the court is held."

Revised Statutes of 1873, Title 13, The Judiciary, c. 7, Circuit Court—Jurisdiction.

"SEC. 629. The circuit courts shall have original jurisdiction as follows: . . . Tenth. Of all suits by or against any banking association established in the district for which the court is held, under any law providing for national banking associations."

These provisions were derived from that part of § 57 of the 1864 Act which conferred jurisdiction on the federal courts.

6. Act of July 12, 1882, c. 290, 22 Stat. 162, an Act to enable national banking associations to extend their corporate existence, and for other purposes. Section 4 of that Act contained the following proviso:

". . . *Provided, however,* That the jurisdiction for suits hereafter brought by or against any association established under any law providing for national-banking associations, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business when such suits may be begun: And all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed." [1]   22 Stat. 163.

---

[1] The proviso to § 4 of the Act of 1882 is included in the Supplement to the Revised Statutes at 354 (2d ed. 1891), despite the apparent duplication of the Acts of 1887 and 1888, appearing at 614. It does not appear in the 1925 United States Code, the first official restatement since 1878 of all United States statutes presumptively in effect, evidently because the Committee on Revision cited the entire 1882 Act as repealed, 44 Stat. 1833, by the Act of July 1, 1922, c. 257, § 2, 42 Stat. 767. When the 1948 codification of Title 28 was enacted, the proviso to § 4 of the Act of 1882 was expressly repealed. 62 Stat. 992, § 39 (1948).

7. Act of March 3, 1887, c. 373, as amended by the Act of August 13, 1888, c. 866.

"Sec. 4. That all national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State.

"The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank." [2]   25 Stat. 436.

8. 28 U. S. C. § 1348 contains the present version of the matters covered in the Acts of 1882, 1887 and 1888:

"§ 1348.   Banking association as party.

"The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

---

[2] The Acts of 1887 and 1888 were repealed when the 1911 codification of the judiciary and judicial procedure provisions was enacted. Act of March 3, 1911, c. 231, § 297, 36 Stat. 1168.   These provisions became § 24 of the Judicial Code of 1911, 28 U. S. C. (1940 ed.) § 41 (16), and then § 1348 of Title 28 enacted in 1948.

"All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."

MR. JUSTICE HARLAN, dissenting.

The Court's opinion in these appeals, and some of the things said in *Construction Laborers* v. *Curry, ante,* p. 542, cut deeply into the statutory requirement of "finality" limiting our jurisdiction to review state court judgments.[1]

That requirement is more than a technical rule of procedure, yielding when need be to the exigencies of particular situations. Rather, it is a long-standing and healthy federal policy that protects litigants and courts from the disruptions of piecemeal review and forecloses this Court from passing on constitutional issues that may be dissipated by the final outcome of a case, thus helping to keep to a minimum undesirable federal-state conflicts. In this instance it precludes, in my opinion, the exercise of our appellate jurisdiction at this stage of the proceedings.

The state court judgments now sought to be reviewed are nothing more than a determination that venue was properly laid in the county where suit against these appellants was brought. Such a determination, being tantamount to a denial of a motion to dismiss, is a classic example of an interlocutory ruling that is only a step towards ultimate disposition and is not in itself reviewable as a final judgment. See *Catlin* v. *United States,* 324 U. S. 229; 6 Moore, Federal Practice ¶¶ 54.12 (1), 54.14; see also *Clinton Foods* v. *United States,* 188 F. 2d 289, 291–

---

[1] 28 U. S. C. § 1257 limits the appellate jurisdiction of this Court to review of "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had."

292, and cases cited therein.[2]   It fits squarely within the general rule that a judgment is not final unless it terminates the litigation and leaves nothing to be done but to enforce by execution what has been demanded.   See *Parr* v. *United States,* 351 U. S. 513.

It is true that several specific, and narrowly circumscribed, exceptions to this general rule have been developed in order to deal with extraordinary situations where a judgment is final in substance although not in form. But these appeals do not fall within any of these exceptions.

Thus this is not a situation in which what remains to be done in the state courts is a mere formality, or in which the appellants concede that their whole case must stand or fall on the federal claim.   Compare *Richfield Oil Corp.* v. *State Board of Equalization,* 329 U. S. 69; *Pope* v. *Atlantic Coast Line R. Co.,* 345 U. S. 379; *Construction Laborers* v. *Curry, ante,* p. 542.   Quite the contrary, appellants vigorously deny their liability on the merits of the appellee's claim.

Nor are these appeals like *Radio Station WOW* v. *Johnson,* 326 U. S. 120, where the challenged order required an immediate transfer of property, and where the remaining matters left to be disposed of in the state court were wholly unrelated, would almost certainly have raised no federal question, *and* could not have mooted the question sought to be reviewed.   Here, a victory for appellants on the merits would clearly moot the federal question before us today.   "It is of course not our province to discourage appeals.   But for the soundest of reasons we

---

[2] As the Court stated in the *Catlin* case, 324 U. S., at 236: "[D]enial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable. . . .   Certainly this is true whenever the question may be saved for disposition upon review of final judgment disposing of all issues involved in the litigation . . . ."

ought not to pass on constitutional issues before they have reached a definitive stop." *Republic Natural Gas Co.* v. *Oklahoma,* 334 U. S. 62, 71.

On the other hand, if appellants lost on the merits, the venue question raised in the present appeals would then be open for review by this Court. Hence the controversy is wholly different from *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541, 546, where the challenged order would not have been merged in the final judgment and where, unless immediate review had been granted, no appellate determination of the right claimed could ever have been obtained.

Failing to come within any of these limited exceptions, appellants fall back on the familiar assertion that they should not be subjected to a burdensome trial in the wrong forum, a claim which the Court finds compelling. But surely such a claim cannot be accepted, for there is a large variety of situations in which a ruling on a preliminary matter will determine whether or not the case is to continue; yet a decision that does not definitively terminate the case is plainly not final. To rely on the hardship of being subjected to trial is to do away with the distinction between interlocutory and final orders. It is for this reason that the Court has always held that the hazard of being subjected to trial does not invest a preliminary ruling with the finality requisite to appeal. *E. g., Parr* v. *United States,* 351 U. S. 513, 519–520.

This is not a case of first impression. In *Cincinnati Street R. Co.* v. *Snell,* 179 U. S. 395, the railway company sought to appeal from a determination by the highest court of the State directing a change of venue and remanding the case for further proceedings. The railway company contended that the state law under which the change of venue had been ordered was unconstitutional. The case is thus squarely in point, since the appellants here are also challenging the constitutionality of the appli-

cation of local venue provisions. This Court unanimously dismissed the writ of error for lack of finality, stating:

> "It is true that the order appealed from finally adjudges that a change of venue should have been allowed; but the same comment may be made upon dozens of interlocutory orders made in the progress of a cause. Indeed, scarcely an order is imaginable which does not finally dispose of some particular point arising in the case; but that does not justify a review of such order, until the action itself has been finally disposed of. If every order were final, which finally passes upon some motion made by one or the other of the parties to a cause, it might in some cases require a dozen writs of error to dispose finally of the case." 179 U. S.. at 397.

The *Cincinnati* case also shows the invalidity of the argument of these appellants that they may be spared a trial if their venue claim is presently sustained. For the Court in *Cincinnati* was unmoved by the circumstance that the railway company there had already won a jury verdict which had been set aside by the state court because of faulty venue. *A fortiori*, in a proceeding where the action .has not yet been tried, the Court should be deaf to the similar claims of these appellants.

The Court's decision in these appeals throws the law of finality into a state of great uncertainty and will, I am afraid, tend to increase future efforts at piecemeal review.[3]

These appeals should be dismissed.

---

[3] The Court appears to suggest that these appeals are unique because the decisions were appealable under state law and because national banks arc making a substantial claim of a conflict between a federal and a state statute. But I fail to see how the appealability of interlocutory orders under state law, the identity of the appellants, or the substantiality of the federal claim asserted can have any bearing on whether the judgments appealed from are final.