Morton P. **ROME** and Marjorie T. Rome, Trustees for Mary Rome, Sally Rome and Thomas Rome, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**ELTRA CORPORATION** (formerly Mergenthaler Linotype Company) and First National City Bank of New York, Defendants.

Civ. A. No. 43995.

United States District Court
E. D. Pennsylvania.

Feb. 5, 1969.

Edwin P. Rome, Philadelphia, Pa. (Blank, Rudenko, Klaus & Rome and Morris L. Weisberg, Philadelphia, Pa., on the brief), for plaintiffs.

William B. Pennell, New York City (Shearman & Sterling, New York City, MacCoy, Evans & Lewis, Herbert G. Schick and William M. Marutani, Philadelphia, Pa., on the brief), for defendants.

OPINION

HIGGINBOTHAM, District Judge.

This is a class action brought by the plaintiffs, holders of fifteen (15) one thousand dollar bearer coupon debentures of the Defendant Eltra Corporation (formerly Mergenthaler Linotype Company), against Eltra Corporation and the First National City Bank of New York City, trustee under the indenture, pursuant to the provisions of the Trust Indenture Act of 1939, c. 411, 53 Stat. 1149, 15 U.S.C. §§ 77aaa *et seq.* The suit is based upon the alleged failure by the defendants to give notice to the plaintiffs and other holders of Mergenthaler debentures of the impending deadline for converting their debentures into common stock of the Eltra Corporation, prior to the final day, March 31, 1967. As a result thereof, plaintiffs and a large percentage of the debenture holders allegedly suffered severe financial losses

when the value of their debentures "plummeted" upon the expiration of their right to convert them into Eltra Corporation common stock, and the Corporation refused to extend the conversion deadline.

Although the debentures admittedly were in the possession of the plaintiffs from the date of their purchase in January, 1965, and stated on the faces thereof was the notice "Convertible up to and including March 31, 1967", the plaintiffs base their suit on alleged violations by the defendants of obligations imposed by the common law of fiduciary duties and the Trust Indenture Act of 1939, supra, to inform holders of the debentures by direct notice of the impending termination of their power to convert their debentures into common stock of the corporation, or to take other actions which would have prevented the losses suffered by the plaintiffs and others in their class. The plaintiffs contend that this alleged breach of duty by the defendants is graphically demonstrated by the fact that out of outstanding debentures of $3.2 million, some $860,000 (over 25%) were not converted prior to March 31, 1967, to their holders' obvious financial detriment.

The Complaint was filed on November 7, 1967, but with no request for issuance of summons. On January 4, 1968, the plaintiffs requested issuance of summons, and on that same day sued out writs of foreign attachment against assets of the defendant First National City Bank of New York (hereafter FNCB) in three Philadelphia banks. Thereafter, on January 11, 1968, copies of the Complaint were served on Eltra's statutory agent in Philadelphia, and on FNCB at its main office, 55 Wall Street, New York City. Eltra has filed an answer to the Complaint; but, within twenty days' of being served, FNCB filed a motion to dismiss the suit against it on the ground of lack of venue in this district, and also a motion to dismiss the writs of foreign attachment.

It is the position of FNCB that a national bank may be sued only where it is established; and, as a bank is "established" only in the place specified in its charter as its principal place of business, since FNCB has its principal place of business at 55 Wall Street, New York City, venue properly is laid only in the Southern District of New York. In support of this position FNCB relies on the venue section of the National Banking Act, 12 U.S.C. § 94,[1] and cases construing that statute.

### A. Where National Banks May be Sued

As the Defendant FNCB correctly contends, it is now settled beyond question that 12 U.S.C. § 94 is mandatory and not permissive. All federal appellate courts which have considered the issue have held that for purposes of venue a national bank is a citizen of the state in which it is established or has its principal place of business, and only in that district can it be sued. Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed. 2d 523 (1963); Leonardi v. Chase National Bank, 81 F.2d 19 (2d Cir. 1936), cert. den. 298 U.S. 677, 56 S.Ct. 941, 80 L.Ed. 1398 (1936); Buffum v. Chase National Bank, 192 F.2d 58 (7th Cir., 1951), cert. den. 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952); Cope v. Anderson, 331 U.S. 461, 467, 67 S.Ct. 1340, 1343, 91 L.Ed. 1602 (1947) (dictum). But the plaintiffs urge that such a finding by the court is not dispositive of the defendant's motion to dismiss.

In opposing FNCB's motion to dismiss, the plaintiffs contend that since the action is based in part on alleged violations of the Trust Indenture Act of 1939, the venue section of that act, 15

---

1. 12 U.S.C. § 94 provides:
    Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held in the district in which such association may be established.

U.S.C. § 77vvv [2] applies; and since it is a national venue statute, allowing suit wherever transactions under the indenture occurred, venue is properly established in this district. This argument rests upon two alternative ·bases. The plaintiffs first urge that 12 U.S.C. § 94 grants to national banks a purely personal venue privilege which can be waived; and a national bank which, as herein, accepts the obligations of an indenture trustee under the Trust Indenture Act subjects itself to all of the provisions of the Act, including the venue provision, and by so acting waives any personal privilege it once had "by conduct absolutely antithetical to the assertion of that personal privilege." Alternatively, plaintiffs argue that Congress clearly evidenced an intention that the venue provision of the Trust Indenture Act of 1939 should apply to all indenture trustees, including national banks, and to the extent that the venue section of the National Banking Act would preclude such a result, is impliedly repealed by the former provision.

### B. *The Waiver Question*

■ In relying on the doctrine of waiver to support their argument in opposition to FNCB's motion to dismiss, the plaintiffs have assumed a heavy burden. While it is true that the United States Supreme Court held in First National Bank of Charlotte v. Morgan, 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282 (1894), that § 94 of 12 U.S.C. (then § 57 of the National Banking Act of 1864, 13 Stat. 99, § 57) in exempting national banks from suit outside their home counties, conferred merely a personal privilege which could be waived by a bank; it is well to bear in mind the admonition of the Seventh Circuit Court of Appeals in Buffum v. Chase National Bank, 192 F.2d 58 (7 Cir. 1951), that:

> Waiver is a voluntary and intentional relinquishment or abandonment of a known right or privilege, which, except for such waiver, would have been enjoyed * * * it may be expressed formally or it may be implied as a necessary consequence of the waiver's conduct inconsistent with an assertion of retention of the right. * * * It [waiver] must be proved by the party relying on it. *And if the only proof of intention to waive rests on what a party does or forbears to do, his act or omission to act should be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of his conduct is possible.* [Emphasis added.]

The plaintiffs have alleged no express waiver by FNCB of its right to be sued only in the Southern District of New York, nor any conduct by FNCB, apart from its assumption of the role of indenture trustee under the Trust Indenture Act of 1939, which indicates an intent on its part to waive such a right, or any conduct "inconsistent with an assertion of retention of the right." Therefore the question arises—could FNCB reasonably have known that merely by assuming the duties of indenture trustee under the Act, it was there-

---

2. The Trust Indenture Act of 1939 incorporates as its venue section the general venue provision of the Securities Act of 1933 (15 U.S.C. § 77v(a)), which provides in relevant part:

(a) The district courts of the United States, and the United States Courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any district of which the defendant is an inhabitant or wherever the defendant may be found.

by waiving its right to be sued only in its home district?

The Trust Indenture Act of 1939 does not expressly state that a national bank in acting as an indenture trustee waives the privilege afforded by 12 U.S.C. § 94; no court has ever held that such a result is demanded; nor is such a conclusion compelled by the nature of the duties assumed. The Act sets forth the requirements for qualifying indentures under which securities required to be registered under the Securities Act of 1933, and certain exempted securities, are issued. Indenture trustees are provided for under the Act to protect and enforce the rights and represent the interests of investors in notes, bonds, debentures and other certificates of interest and participation, who, because of the disproportionate expense involved are unable to take individual action to protect their interests, and due to their wide dispersal and concomitant inability to obtain the names and addresses of other investors, are unable to act in concerted fashion through representatives of their own selection to protect and enforce their common interests.[3] Because of prior injurious acts caused when trustees did not possess adequate rights and powers, or adequate duties and responsibilities, the Act requires that a properly qualified indenture have at least one "institutional trustee", which is a corporation organized and doing business under the laws of the United States, or any State or Territory, or of the District of Columbia, and which "(A) is authorized under such laws to exercise corporate trust powers, and (b) is subject to supervision or examination by Federal, State, Territorial, or District of Columbia Authority.[4] Such institutional trustee is also required to have, at all times, a specified minimum amount of combined capital and surplus.[5] It was obviously contemplated that national banks would act as indenture trustees under the Act, for § 77uuu(b) (Special Powers of the [Securities Exchange] Commission) provides:

(b) The Treasury Department, the Controller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Reserve Banks, and the Federal Deposit Insurance Corporation are authorized, under such conditions as they may prescribe, to make available to the Commission such reports, records, or other information as they may have available with respect to trustees or prospective trustees under indentures qualified or to be qualified under this subchapter, and to make through their examiners or other employees for the use of the Commission, examinations of such trustees or prospective trustees.

As a prospective institutional indenture trustee a national bank could normally be expected to fulfill the minimal qualifications imposed by the Act; and, of particular relevance to this case, would be subject to supervision not only by the Controller of the Currency, but also by a federal or State court, as required by § 77jjj(a) (1). Thus, it would be logically permissible for a national bank to assume that there was nothing inconsistent about acting as an indenture trustee under the Act, while maintaining its privilege of being sued only in its home jurisdiction, and for that reason could not be said to be voluntarily relinquishing a right in assuming its duties as a trustee. Therefore, in the absence of any authority to the contrary, I find that in assuming the duties and obligations of an indenture trustee under the Trust Indenture Act of 1939, Defendant FNCB did not thereby waive its right to be sued only in the Southern District of New York.

## C. *Repeal by Implication*

■ The plaintiff's remaining argument is that the venue section of the National Banking Act, 12 U.S.C. § 94, is

---

3. 15 U.S.C. § 77bbb.

4. 15 U.S.C. § 77jjj(a) (1).

5. 15 U.S.C. § 77jjj(a) (2).

impliedly repealed, *pro tanto*, by the venue provisions of the Trust Indenture Act of 1939 and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., when a national bank acts as an indenture trustee under the Act.

There have been no adjudications of the issue of whether the venue section of the Trust Indenture Act of 1939 impliedly repeals the venue section of the National Banking Act. However, as was noted earlier, the Trust Indenture Act of 1939 incorporates as its venue provision that of the Securities Act of 1933 (15 U.S.C. § 77v(a)), and there have been several recent cases in which federal courts have discussed the relationship of § 94 to the venue sections of the Securities Act of 1933, and the Securities Exchange Act of 1934, and have held that there is no implied repeal of the former by the latter provisions. General Electric Credit Corp. v. James Talcott, Inc., 271 F.Supp 699 (S.D.N.Y.1966); Friedman v. Bintliff, 67 Civ. 3661 (S.D.N.Y. 1967), aff'd 398 F.2d 614 (2d Cir., 1968), cert. den. Wyndam Associates v. Bintliff, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed. 2d 438 (1968); Bruns Nordeman & Company v. American Bank & Trust Company, 394 F.2d 300 (2d Cir., 1968), cert. den., 393 U.S. 855, 89 S.Ct. 97, 21 L.Ed. 2d 125 (Oct. 14, 1968). *Cf.* Levin v. Great Western Sugar Company, 274 F.Supp. 974 (D.N.J.1967).

While not bound by the holding in any of the cases, particularly since the only appellate decision is not of this Circuit, I concur in the judgment of the Second Circuit Court of Appeals in the *Bruns Nordeman* case, supra, that given the previous history of highly restricted venue of actions against national banks, and the failure of Congress to specially address itself to the issue in the venue sections of the Securities laws, or in the legislative history preceding their enactment, there is an insufficient basis on which to find that in enacting the Securities laws of 1933, 1934, and 1939, Congress intended to affect the existing venue status of national banks.

As the United States Supreme Court noted in United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939):

It is a cardinal principle of construction that repeals by implication are not favored. Where there are two acts upon the same subject, the rule is to give effect to both if possible. * * * The intention of the legislature to repeal "must be clear and manifest". * * * There must be "a positive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed by implication only, pro tanto, to the extent of the repugnancy."

As noted above, there was no clear intent indicated by Congress to repeal the venue section of the National Banking Act, and there is no "positive repugnancy" between the statutes, thus it is possible to give effect to both. Enforcement of § 94 does not preclude suit against a national bank, it merely restricts a plaintiff's choice of forum. And, while there is some validity to the plaintiff's contention that such a construction may in some cases work a severe hardship on plaintiffs, while allowing nation-wide venue against national banks would cause relatively little inconvenience to them in most cases; as the courts in Mercantile National Bank of Dallas v. Langdeau, *supra,* and *Bruns Nordeman, supra,* pointed out, such an argument is more properly addressed to Congress than to the courts, particularly since Congress has not shown itself to be reluctant to legislate in the field of banking.

Therefore, finding all of the plaintiffs' arguments in opposition to the Defendant FNCB's Motion to Dismiss unavailing, the motion shall be granted.