**SECURITY NATIONAL BANK OF LUBBOCK, Appellant,**

v.

**WASHINGTON LOAN AND FINANCE CORPORATION and Dallas International Bank, Appellees.**

No. 19555.

Court of Civil Appeals of Texas, Dallas.

June 26, 1978.

Rehearing Denied Aug. 21, 1978.

James A. Walters, Walters & Associates, Lubbock, for appellant.

Donald C. McCleary, Wynne & Jaffe, D. Ronald Reneker, Daniel C. Garner, Geary, Stahl, Koons, Rodhe & Spencer, Dallas, for appellees.

ROBERTSON, Justice.

This is a venue case. Washington Loan and Finance Corporation (Washington) sued Dallas International Bank (DIB) for breach of a written agreement and Security National Bank of Lubbock (Security) for tortious interference with contractual relations between Washington and DIB. DIB answered and asserted a counterclaim and cross-claim for interpleader, requesting Washington and Security to interplead their respective claims to funds held by DIB. Security filed a plea of privilege, asserting its right as a national bank, under 12 U.S.C.A. § 94 (1945), to be sued in the county of its residence. Both Washington and DIB filed controverting pleas, and upon trial to the court, Security's plea of privilege was overruled. Security now appeals from that order. We reverse and remand.

Early in 1977, an individual named Peter Payne purchased a certificate of deposit from DIB in the amount of $100,000. The certificate was to mature in 1983 and bore interest at the rate of 7½% per annum. After the certificate was delivered to Payne, he assigned his right to receive interest on the certificate to Washington. The day after the assignment was made, Payne borrowed $100,000 from Security, granted Security a security interest in the certificate, and delivered the certificate to be held until he repaid the loan. Later, Security learned that Payne might not be financially able to repay the loan, and demanded payment in full. When Payne did not repay the loan, Security presented the certificate to DIB and demanded early redemption of the certificate, less penalty for

redemption prior to maturity. Washington simultaneously demanded that DIB retain the funds until maturity so that the quarterly interest payments would be made in accordance with its assignments from Payne. Both Security and Washington threatened to sue DIB unless their respective demands were met.

Thereafter, when DIB failed to pay an installment of interest on the certificate to Washington, Washington filed suit seeking relief against DIB for breach of its agreement to pay interest under the certificate, and against Security for tortious interference with that agreement. To protect itself from multiple or inconsistent liability, DIB filed a counterclaim and a cross-claim requesting that Washington and Security be required to establish their respective claims in court. Security filed pleas of privilege against the claims of both Washington and DIB, asserting its right, as a national bank, to be sued in the county of its residence, according to the provisions of 12 U.S.C.A. § 94 (1945).

■ The primary question presented by this appeal concerns the applicability of 12 U.S.C.A. § 94 (1945), which provides:

> Actions and proceedings against any association under this chapter [Chapter 2 ("National Banks") of Title 12 ("Banks and Banking")] may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

The provision is a mandatory venue statute which requires suits against national banks to be filed in the county or district of their residence. *Mercantile National Bank at*

*Dallas v. Langdeau,* 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); *Langdeau v. Republic National Bank of Dallas,* 365 S.W.2d 783 (Tex.1963). As a federal statute, it controls over any conflicting state venue provisions. *First National Bank of Marshall, Texas v. Texas Foundries, Inc.,* 512 S.W.2d 690 (Tex.Civ.App.—Beaumont 1974, no writ).

■ In order to determine whether this statute applies to the present case, we must first decide whether the claims asserted by Washington and DIB are claims "against" Security within the meaning of the statute. If we conclude that they are, we must then determine whether the claims are "local" in nature, that is, allowing suit outside Security's county of residence, or "transitory," in which case the suit must be tried where Security resides.[1]

I.

■ Both Washington and DIB assert that their respective claims are not "against" Security within the meaning of 12 U.S.C.A. § 94 (1945).[2] Washington argues that the primary thrust of its suit is directed against DIB to enforce its right to receive interest under the certificate until its maturity. Even assuming this to be the case,[3] it is apparent that enforcement of that right will prejudice Security's alleged right to enforce its security interest. Although a decision awarding continued interest to Washington would not result in recovery of damages against Security, the parties are nonetheless in an adversary relationship in the sense that each is asserting a conflicting right. Since a decision to enforce Washington's rights would preclude Security from exercising its right of redemption, Washington's claim is necessarily "against" the interests of Security. *See*

---

1. Although Washington and DIB argue that Security waived its plea of privilege by filing pleas in bar and in abatement which were not made subject to the previously filed plea of privilege, we conclude that since these pleas were included in Security's answer, which was made "expressly subject to [Security's] Plea of Privilege," these pleas did not waive the plea of privilege.

2. As quoted earlier, the statute, by its terms, only applies to "[a]ctions and proceedings *against* any association under the chapter . . . ."

3. Significantly, Washington does not contend that its suit for "tortious interference" is not a claim "against" Security.

*Security First National Bank v. Tattersall,* 311 So.2d 218, 222 (La.1975) (action held to be "against" national bank where the right to control of a certificate of deposit was to be adjudicated).

Although the United States Supreme Court, in *Casey v. Adams,* 102 U.S. 66, 68, 26 L.Ed. 52 (1880) (decided under the predecessor statute to the present provision) seems to hold that priority disputes between a bank and other creditors are not actions "against" a national bank, the present suit is not a "priority" dispute. As the term is commonly used, "priority" is the quality or condition of being first in order of right; it implies that there is a second right which, although just, is subordinate to another in enforcement. *Lincoln National Bank and Trust Company of Central New York v. Colgan,* 71 Misc.2d 908, 337 N.Y. S.2d 412, 413 (1972). Here, Washington does not seek to subordinate the bank's security interest; rather, it seeks to absolutely foreclose Security's chances to receive interest on the certificate. If Washington is successful on the merits, Security's claim with respect to interest on the certificate will not be subordinated, but declared *invalid* and *unenforceable.* Accordingly, we hold that this case is not a "priority" dispute within the meaning of *Casey v. Adams, supra,* but rather a suit "against" Security to declare its right to receive interest under the certificate unenforceable.

 DIB also argues that its action is not a suit "against" Security, but for a different reason. It urges that as the initiating party in an interpleader action, it seeks no affirmative relief against Security, but has merely invited Security to present its claim for judicial determination. We

disagree. Even assuming that DIB's action is a true interpleader,[4] we conclude that it is a suit "against" Security within the meaning of the national bank venue statute. An interpleader action is not a mere "invitation" to litigate; a final judgment in interpleader is conclusive of the rights of those claimants named in the action who are properly subjected to the court's jurisdiction through service of process. *See Thaxton v. Whitesides,* 54 S.W.2d 1059, 1060 (Tex.Civ.App.—Fort Worth 1932, no writ) (obligor on note has the right to interplead pledgor so that judgment may be res judicata of pledgor's rights); *see also Travelers Ins. Co. v. Selinger,* 31 Conn.Sup. 528, 324 A.2d 925 (1974) (default judgment entered against claimant in interpleader action held a conclusive determination of that claimant's rights); *cf. Reynolds v. Aetna Life Ins. Co.,* 6 App.Div. 254, 39 N.Y.S. 885 (1896) (final judgment rendered in interpleader action held not conclusive of rights of a claimant not a party to the suit). Accordingly, the effect of DIB's interpleader action is to force Security to litigate its claim in that particular action. In this sense, Security has the same responsibilities as an ordinary defendant in any civil suit, namely, to litigate or accept foreclosure of its rights by default. We hold, therefore, that an interpleader action is a proceeding "against" Security for the purposes of venue under 12 U.S.C.A. § 94 (1945). *See Super Value Stores, Inc. v. Western Film Service Corp.,* 416 F.Supp. 662, 664 (D.Minn. 1976) (holding that the venue of an interpleader action on which a national bank is claimant is controlled by the specific provisions of 12 U.S.C.A. § 94 (1945), rather than the general interpleader venue statute, 28 U.S.C.A. § 1397 (1972).

4. There is some doubt as to whether DIB's action is a true interpleader. In order to maintain an interpleader action, the party bringing the action must (1) have possession of the thing or fund, and (2) tender the thing or fund into court. *Cockrum v. Cal-Zona Corporation,* 373 S.W.2d 572 (Tex.Civ.App.—Dallas 1963, no writ); *Bennett v. Smead,* 180 S.W.2d 663, 664 (Tex.Civ.App.—Texarkana 1944, no writ). Here, DIB has not tendered the disputed funds into court, claiming that the source of the dispute, *i. e.,* the right to receive interest, would

be destroyed by deposit into the registry of the court. We note, however, that only an unconditional *tender,* not a deposit, is required. *See Cockrum v. Cal-Zona Corporation, supra,* at 575; *Richey v. Stanley,* 38 S.W.2d 1104 (Tex. Civ.App.—Texarkana 1931, no writ). Moreover, even if a deposit is made, any interest which accrues thereon is payable to the party ultimately adjudged to be its owner. *See Sellers v. Harris County,* 483 S.W.2d 242, 243 (Tex. 1972).

## II.

Washington and DIB next contend that § 94 does not apply because their actions are "local" in nature, allowing suit outside Security's county of residence, rather than "transitory," in which case the suit must be tried in the county wherein Security resides. This distinction between "local" and "transitory" forms the basis for an exception to the applicability of § 94 in certain cases. It was first enunciated in *Casey v. Adams,* 102 U.S. 66, 26 L.Ed. 52 (1880), in which the Supreme Court held that an action which is purely "local" in character, such as a suit concerning ownership of realty, need not be tried in the county of the bank's residence. As the court stated:

> Local actions are in the nature of suits *in rem,* and are to be prosecuted where the thing on which they are founded is situated.

See also *Mercantile National Bank at Dallas v. Langdeau,* 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); *Michigan National Bank v. Robertson,* 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963); *Chateau Lafayette Apartments, Inc. v. Meadow Brook National Bank,* 416 F.2d 301 (5th Cir. 1969); *Kader v. First National Bank of Fort Myers,* 387 F.Supp. 535 (W.D.Pa.1975); *South Padre Development Co., Inc. v. Texas Commerce Bank National Association,* 538 S.W.2d 475, 480 (Tex.Civ.App.—Corpus Christi 1976, no writ); *Fort Worth National Bank v. Ballanfonte,* 469 S.W.2d 9 (Tex.Civ. App.—Houston [14th Dist.] 1971, no writ); *Lone Star Producing Co. v. Bird,* 406 S.W.2d 344 (Tex.Civ.App.—Tyler 1966, writ dism'd); *Central Bank, National Association v. Superior Court for the County of Sacramento,* 30 Cal.App.3d 962, 106 Cal. Rptr. 912 (1973).

In order to determine the nature of the actions here pressed against Security, we must examine the facts alleged in the petitions of Washington and DIB, the principal rights asserted therein, and the relief sought. *Brown v. Gulf Television Co.,* 157 Tex. 607, 306 S.W.2d 706 (1957); *South Padre Development Co., Inc. v. Texas Com-*

*merce Bank National Association, supra,* at 480. Washington's claim for damages resulting from Security's "tortious interference" with its contract does not concern a particular *res,* and although DIB's "interpleader" action purports to decide the right to receive interest on a certificate of deposit, the certificate upon which the interpleader is founded is held by *Security* at its place of residence. For this case to be a "local" action, the certificate which forms the basis of DIB's interpleader would have to be held by DIB in Dallas County, the county in which the action was filed. Since it is not located in this county, we conclude that DIB's interpleader is a "transitory" action which must be prosecuted in Security's county of residence.

Accordingly, the trial court's order overruling Security's plea of privilege is reversed and judgment is here rendered transferring this cause to Lubbock County.

GUITTARD, C. J., not participating.