**RED BIRD BANK OF DALLAS, John R. Payne, and Harry S. Scaling, Appellants,**

v.

**CROCKER NATIONAL BANK, Appellee.**

No. 05–82–01323–CV.

Court of Appeals of Texas, Dallas.

Feb. 10, 1984.

Richard Lee McSpedden, Gary R. Stephens, Dallas, for appellants.

Albert E. Andres, Wise & Stuhl, Dallas, for appellee.

Before CARVER, ALLEN and SHUMPERT, JJ.

CARVER, Justice.

Red Bird Bank appeals from a trial court ruling sustaining Crocker National Bank's special appearance. Red Bird claims this ruling was error because: (1) Crocker has sufficient contacts with Texas to subject it to in personam jurisdiction; (2) 12 U.S.C.A. § 94 (West 1945) does not mandate venue in California because Crocker fits within the "branch bank" exception; and (3) 12 U.S.C.A. § 94 (West 1945) does not mandate venue in California because Crocker waived its application by improperly asserting its venue rights in a special appearance motion. We hold that 12 U.S.C.A. § 94 controls the result of this case, and we affirm on that basis without reaching the issue of minimum contacts.

Red Bird Bank sued Crocker National Bank alleging it failed to timely dishonor a check that was presented for payment in California. Red Bird concedes that Crocker is a national banking association organized under Title 12 of the United States Code, that its principal place of business is in California, and that it was established there. Red Bird also does not dispute that a case such as this is generally controlled by 12 U.S.C.A. § 94 (West 1945):

> Actions and proceedings against any association under this chapter may be had in any district or territorial court of the United States held within the district in which such association may be established or any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

Red Bird first argues that a loan production office that Crocker operates in Dallas is a "branch bank"; therefore, Crocker is located in Texas for purposes of 12 U.S.C.A. § 94 (West 1945) and can be sued here. A "branch" is defined in 12 U.S.C.A. § 36(f) (West 1945), as any office "at which deposits are received, or checks paid, or money lent." There is no question that Crocker's Dallas office does not receive deposits or pay checks. Therefore, the argument turns on whether the activities at the office constitute "loaning money."

The Dallas office solicits loan applications from businesses in this region and forwards them to the San Francisco office for consideration. There are pre-established criteria which, if not met by an application, result in such application not being forwarded by the Dallas office to California for consideration. The Dallas office also checks the credit of the applicant and submits to California a recommendation thereon. If the California office approves the application, the legal documents are finalized through the mail, and all proceeds are distributed directly from California to the client. Although payments are due in San Francisco, occasionally one is mistakenly mailed to the Dallas office which redirects it to California. The Dallas office has no books, ledgers, or accounting system for recording debits or credits to a customer's account. If a client defaults on a loan, the Dallas office might arrange to repossess the collateral involved and sell it.

We hold that the foregoing activities do not constitute "lending money." This is a question of federal law. *Driscoll v. Northwestern National Bank*, 484 F.2d 173, 175 (8th Cir.1973). The Comptroller of the currency is charged with the execution of federal banking laws. 12 U.S.C.A. § 1 (West Supp.1983). The Comptroller issued the following interpretive ruling concerning the status of loan production offices:

> "*Origination of loans by employees or agents of a national bank or of a subsidiary corporation at locations other than the main office or a branch office of the bank does not violate 12 U.S.C. §§ 36 and 81: Provided, that the loans are approved and made at the main office or a branch office of the bank or at an office of the subsidiary located on the premises of, or contiguous to, the main office or branch office of the bank.*" 12 C.F.R. § 7.7380(b) (1982).

We are constrained to give the interpretive decisions of the Comptroller great weight. *Investment Company Institute v. Camp*, 401 U.S. 617, 626–27, 91 S.Ct.

1091, 1097, 28 L.Ed.2d 367 (1971). In this case, the loans are approved and made at Crocker's California office. The forwarding of sufficient loan applications and the rejection of insufficient loan applications by the Dallas office do not constitute "approval" as both are dictated by pre-established criteria with no apparent discretion vested in the Dallas personnel. Neither are the other activities of Crocker's Dallas office so significant as to compel us to contradict the interpretation of the Comptroller who enforces the statute. Therefore, Crocker does not operate a "branch office" in Texas, and Red Bird cannot use that exception to force Crocker into court here.

■ Red Bird also argues that Crocker waived its rights under 12 U.S.C.A. § 94 (West 1945) by improperly proceeding under a special appearance motion. They argue that section 94 is exclusively a venue statute, *University National Bank v. MacFarland*, 635 S.W.2d 200 (Tex.App.—San Antonio 1982, no writ); consequently, Crocker could only proceed under a plea of privilege. *Texas Highway Department v. Jarrell*, 418 S.W.2d 486, 489 (Tex.1967). The problem is that a plea of privilege only resolves venue questions within Texas, not those involving other states. *West v. City National Bank*, 597 S.W.2d 461, 464 (Tex. Civ.App.—Beaumont 1980, no writ). Although national banks located within Texas could use the plea of privilege, e.g., *First National Bank of Marshall, Texas v. Texas Foundries, Inc.*, 512 S.W.2d 690 (Tex. Civ.App.—Beaumont 1974, no writ), Red Bird's contention would essentially bar out-of-state nationally-chartered banks like Crocker from asserting their federal venue rights in Texas state court proceedings.

Red Bird's argument that Crocker should have removed the case to federal court and moved to transfer there is not satisfactory. It is not certain that every case could be removed such as those without a federal issue or complete diversity of the parties. Nor would that opportunity change the fact that Texas was denying national banks their federal venue rights by denying them a procedural vehicle to assert them in state court. We read *Mercantile National Bank at Dallas v. Langdeau*, 371 U.S. 555,

83 S.Ct. 520, 9 L.Ed.2d 523 (1963), as holding that federal venue rights are superior to state jurisdictional and venue requirements. As one Texas court phrased it "[the bank's] rights were governed by the federal statute, not by the Texas Rules of Civil Procedure." *First National Bank v. Texas Foundries, Inc.*, 512 S.W.2d at 692. If we deny Crocker a procedural means of arguing section 94, or if we force it to flee to federal court to do so, state law is thwarting federal law, which in this instance is impermissible.

Further, although the procedure was not in issue, recent Texas appellate cases have sustained the assertion of federal venue rights by means of a special appearance. *New Jersey Bank v. Knuckley*, 637 S.W.2d 920 (Tex.1982); *Stephenson v. Walker*, 593 S.W.2d 846 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). We hold that a special appearance is a proper means of raising this federal venue issue and that there was no waiver of the issue in this case.

Affirmed.